UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED M. VILLERY,<br><br>   Plaintiff,<br><br>  vs.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS AND<br>REHABILITATION, et al.,<br><br>   Defendants. | 1:15-cv-00987-GSA-PC<br><br>ORDER DISMISSING COMPLAINT FOR<br>FAILURE TO STATE A CLAIM, WITH<br>LEAVE TO AMEND<br>(ECF No. 1.)<br><br>ORDER DENYING MOTION FOR<br>PRELIMINARY INJUNCTIVE RELIEF<br>FOR LACK OF JURISDICTION<br>(ECF No. 2.)<br><br>THIRTY DAY DEADLINE TO FILE<br>AMENDED COMPLAINT NOT<br>EXCEEDING 25 PAGES |

## I. BACKGROUND

  Jared M. Villery ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794.  On June 29, 2015, Plaintiff filed the Complaint commencing this action, together with an emergency motion for preliminary injunctive relief.  (ECF Nos. 1, 2.)  The Complaint and motion are now before the court.

## II. SCREENING REQUIREMENT

  The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678.  While factual allegations are accepted as true, legal conclusions are not.  Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief.  Id. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.   SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at the California Substance Abuse Treatment Facility and State Prison (SATF) in Corcoran, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR).  The events at issue in the Complaint allegedly occurred at California State Prison-Los Angeles County (LAC) in Lancaster, California, California Correctional Institution (CCI) in Tehachapi, California, and SATF.  Plaintiff names as defendants the CDCR, Jeffrey Beard (Secretary, CDCR), J. Lewis (Deputy Director CDCR), R. L. Briggs (Chief, Office of Appeals), K. Z. Allen (Appeals Examiner), Dr. Oleg Liflyandsky

(M.D, LAC), Dr. C. Cornell (Psy.D., LAC), Dr. Richard Kendall (Psy.D., LAC), Dr. Barbara Zager (Psy.D., LAC), Dr. Acosta (Psy.D., LAC). Kimberly Holland (Warden, CCI), R. A. Groves (Chief Deputy Warden, CCI), C. Schuyler (Associate Warden, CCI), Captain Jay Jones (CCI), Dr. Majid Naficy (M.D., CCI), Alicia Guerrero (Correctional Counselor II, CCI), Dr. A. Aithal (Psy.D., CCI), Dr. Jennifer Seymour (Psy.D., CCI), A. Carrizales (Social Worker, CCI), J. Woodard, (Correctional Counselor I, CCI), Captain M. Pallares (SATF), Fisher (Correctional Counselor II, SATF), S. Hernandez (Correctional Counselor I, SATF), and Dr. A. Grimmig (Psy.D., SATF).   Plaintiff's factual allegations follow.

Plaintiff has been diagnosed with Post-Traumatic Stress Disorder (PTSD), as a result of experiencing excessive levels of violence at the Los Angeles County Jail and various state prisons from 2003 to 2007, culminating in him being beaten and stabbed in the back.  Plaintiff witnessed similar violence from 2009 to 2014 while housed at LAC.  Plaintiff's PTSD symptoms have deteriorated, which has led to violence between him and his cellmates, as well as numerous instances of near violence.  Placement in living quarters with other inmates has acted as a primary trigger for Plaintiff's condition.  For years, he has suffered from minimal sleep because of his inability to sleep around other inmates.  His attempts to sleep with other inmates around him have resulted in numerous fights between him and his cellmates, triggered by any loud noise or sudden movements made by these individuals.  Forced housing with other inmates has led to further deterioration of Plaintiff's condition.  Even when Plaintiff is awake, the sudden movements or loud noises by other inmates have resulted in numerous instances of near violence.

**_LAC_**

On October 8, 2009, Plaintiff was transferred to LAC.  Between October 8, 2009, and May 25, 2010, Plaintiff was placed with five different cell mates and spent about three weeks in a cell by himself due to the difficulty of finding an inmate who would live with him.

On or about May 25, 2010, Plaintiff received a new cell mate who was quiet and understanding, and although there were a few unreported minor altercations, Plaintiff remained with this cell mate until August 6, 2012.

Plaintiff began to convey to mental health staff his desire to be housed by himself due to the problems he was having with cell mates. As Plaintiff's symptoms worsened, he was involved in a fist fight with another inmate outside of the cell in July 2011 when the inmate bumped into Plaintiff's back. This triggered a flashback to Plaintiff's stabbing, causing him to lash out.

After Plaintiff's cell mate was transferred in August 6, 2012, he was given another cell mate who triggered Plaintiff's symptoms with sudden movements and loud noises, sometimes leading to violence. Over time, the cell mate got better at relating to Plaintiff, but staff became aware of the problems and moved the cell mate to a different cell on July 13, 2013. Out of the housing officers' concern for his and other inmates' safety, Plaintiff was housed alone until October 3, 2013. During this time, Plaintiff pressed his need for single cell housing during his mental health counseling sessions with defendant Acosta. On September 25, 2013, Acosta informed Plaintiff that defendant Kendall had sent an e-mail to all mental health staff at LAC, instructing them to refrain from making any housing recommendations, due to overcrowding.

On September 29, 2013, Plaintiff filed an inmate grievance challenging the housing policy restricting mental health staff from making housing recommendations. Despite implementation of the policy, mental health staff denied that the policy existed, and defendants Zager and Kendall denied the grievance. Plaintiff pursued the grievance, which was denied again by defendants Cornell, Kendall, Liflyandsky, and Lewis. Despite his deteriorating condition, mental health care staff refused to make any housing recommendations for Plaintiff, based solely on the directive to refrain from doing so based on overcrowding.

While housed alone, with therapy, Plaintiff's symptoms improved. However, on October 3, 2013, Plaintiff was forced to move in with another inmate, and his symptoms flared. As Plaintiff was moving into the cell, he had a confrontation when the new cell mate moved behind him without warning. The cell mate hastily left the cell and refused to return. Plaintiff was moved back to a cell by himself.

On December 3, 2013, staff moved another inmate into Plaintiff's cell. This inmate only remained until December 14, 2013, due to a number of near altercations. Plaintiff was

housed by himself until January 14, 2014, when another inmate was housed with him, forcing Plaintiff to remain without sleep until he was transferred to CCI the next day.

### ***CCI***

Plaintiff was transferred to CCI on January 15, 2014.  The next day, and several times thereafter, Plaintiff notified defendant Carrizales about his problems living with other inmates. Carrizales refused to make any housing recommendations for Plaintiff, based on the fact that mental health staff had been instructed not to make recommendations due to overcrowding. Plaintiff also spoke with defendant Naficy on January 22, 2014, and several times thereafter, about his problems and PTSD symptoms.  Naficy simply reiterated that mental health staff would not make housing recommendations.

On January 22, 2014, Plaintiff was interviewed about his need for single cell housing by defendant Captain Jay Jones, who informed Plaintiff again that mental health staff "don't make housing recommendations" on his facility.  (Cmp ¶63.)  Jones threatened Plaintiff with disciplinary action if he continued to speak to mental health staff about needing to live alone. Hours later, another inmate was moved into Plaintiff's cell.  This led to near constant triggering of Plaintiff's symptoms, resulting in sleep deprivation and near altercations.  The other inmate sought to move out of Plaintiff's cell, but staff refused.  The cell mate had to convince medical staff to apply a medical housing restriction just to get moved to a different cell on May 2, 2014.

On January 29, 2014, Plaintiff met with defendant Aithal and described his symptoms and cell mate problems, but Aithal informed Plaintiff again that mental health staff do not make housing recommendations.  Later that day, Plaintiff attended a meeting with his initial classification committee, consisting of defendants Jones, Guerrero, and Woodard.  Plaintiff explained in detail all of the problems he had experienced while living with other inmates, but the committee members refused to approve him for single cell housing.

Plaintiff filed an inmate grievance based on custody staff's refusal to approve single cell housing.  However, defendants Guerrero, Schuyler, Groves, Allen, and Briggs denied the grievance until Plaintiff's appeals were exhausted.  None of Plaintiff's cell mates were

///

5

interviewed concerning Plaintiff's claims.   On March 8, 2014, Plaintiff wrote a letter to defendant Warden Holland describing his problems, but single cell housing was still denied.

Plaintiff was left by himself from May 2, 2014 to June 6, 2014, when another inmate moved in with him.  After only eleven days, the inmate was moved out at his own request, due to the usual problems.  On June 18, 2014, Plaintiff was given another cell mate, resulting in ten days of verbal confrontations and near fist-fights.  The other inmate was severely bipolar and schizophrenic, and he disregarded Plaintiff's explanation about his own problems.  Both Plaintiff and the cell mate requested to be separated, and Plaintiff was moved on June 28, 2014.

Between June 28, 2014 and October 21, 2014, Plaintiff was given three different cell mates, in succession, and after multiple problems due to Plaintiff's PTSD, Plaintiff was moved to a cell by himself because staff could not find anyone willing to live with him.

On July 25, 2014, Plaintiff was seen by defendant Seymour.  Plaintiff explained his need to live by himself, but Seymour again informed him that mental health staff refused to make housing recommendations.

On December 8, 2014, another inmate was moved in with Plaintiff, and the same problems arose.  On January 2, 2015, Plaintiff was placed by himself in administrative segregation for unrelated non-disciplinary reasons until he was transferred to SATF on January 9, 2015.

### ***SATF***

On January 9, 2015, Plaintiff was transferred to SATF and housed with another inmate, leading to numerous confrontations.  On February 5, 2015, the other inmate was moved out of Plaintiff's cell.

On January 22, 2015, Plaintiff met with his initial classification committee, consisting of defendants Pallares and Hernandez.  Although Plaintiff explained his ongoing problems, Pallares and Hernandez refused to classify Plaintiff for single cell housing.  On January 28, 2015, Plaintiff spoke with defendant Fisher about his mental health problems, but Fisher stated that Plaintiff would not be single cell housed.

///

Plaintiff was housed alone until February 8, 2015, when another cell mate moved in with him.  The same problems as before arose, and on April 25, 2015, Plaintiff was moved to a different cell.

On February 11, 2015, Plaintiff described his issues to defendant Grimmig, who refused to make any housing recommendations.  Plaintiff filed a new grievance, and on April 16, 2015, he spoke with defendant Fisher, who again denied Plaintiff single cell housing.

Between April 25, 2015 and May 7, 2015, Plaintiff had three different cell mates in succession, and due to Plaintiff's symptoms, all of the cell mates were found incompatible.  On May 6, 2015, Plaintiff again explained his problems to defendant Grimmig, but Grimmig informed Plaintiff that mental health staff at SATF would not make housing recommendations, due to the overcrowding policy.

On May 11, 2015, another inmate moved in with Plaintiff.  Despite being informed about Plaintiff's problems, the inmate slammed the cell door behind Plaintiff, which caused Plaintiff to react.  There was almost an altercation, and the cell mate asked to go to administrative segregation for safety concerns about an hour later.

On May 12, 2015, another cell mate, Nicolas Morales, was moved in with Plaintiff, and the same problems as before arose.  However, Morales sleeps a great deal and has agreed to remain on his bunk as much as possible, which somewhat alleviated the problems by minimizing the types of actions which led to violent reactions from Plaintiff.  Plaintiff's mental health and PTSD symptoms continued to deteriorate.

Due to an upcoming reduction in security level, Plaintiff faces transfer to a dormitory setting, where he will be forced to live with seven other inmates.  None of the named defendants, or any other CDCR staff member, has made any effort to interview any of Plaintiff's former cell mates about his problems, deliberately choosing to ignore the issues and continuing to force Plaintiff to live with other inmates.

Plaintiff requests monetary, injunctive, and declaratory relief, attorney's fees, and costs of suit.

///

## IV.    PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or
> causes to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by
> the Constitution . . . shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for
> redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal
Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997)
(internal quotations omitted). "To the extent that the violation of a state law amounts to the
deprivation of a state-created interest that reaches beyond that guaranteed by the federal
Constitution, Section 1983 offers no redress." Id.

### A.    Improper Venue for Claims Based on Events at California State Prison-Los Angeles County (LAC)

The federal venue statute requires that a civil action, other than one based on diversity
jurisdiction, be brought only in "(1) a judicial district where any defendant resides, if all
defendants reside in the same state, (2) a judicial district in which a substantial part of the
events or omissions giving rise to the claim occurred, or a substantial part of the property that is
the subject of the action is situated, or (3) a judicial district in which any defendant may be
found, if there is no district in which the action may otherwise be brought." 28 U.S.C.
§ 1391(b). Therefore, venue for Plaintiff's claims arising out of events at LAC is not proper in
this district and may not be pursued in this action.

Plaintiff shall be granted an opportunity to file an amended complaint, in which he
should omit any claims for relief arising out of events occurring at LAC. See Costlow v.
Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986) (court may raise defective venue sua sponte); see
also Davis v. Mason County, 927 F.2d 1473, 1479 (9th Cir. 1991) (courts have broad discretion
regarding severance). If Plaintiff wishes to pursue the claims arising at LAC, he may file a new
action in the Central District of California.

///

**B.**     <u>Eighth Amendment Deliberate Indifference</u>

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted).  In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  <u>E.g.</u>, <u>Farmer v. Brennan</u>, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2006).  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation.  <u>Id.</u> at 731.

Where an inmate's claim is based on alleged failure to prevent harm, the inmate may satisfy the "sufficiently serious" requirement by showing the existence of "conditions posing a substantial risk of serious harm" to him.  <u>Farmer</u>, 511 U.S. at 834; <u>Helling v. McKinney</u>, 509 U.S. 25, 33-34 (1993).  The Eighth Amendment protects against future harm to inmates because inmates must furnished with basic human needs, one of which is "reasonable safety."  <u>Helling</u>, 509 U.S. at 33.  "It is cruel and unusual punishment to hold convicted criminals in unsafe conditions."  <u>Id.</u>  A prisoner can show an Eighth Amendment violation by providing evidence that prison officials, with deliberate indifference, exposed him to a serious risk to his safety.  <u>See id.</u> at 35.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious

medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id.  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

   "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

   "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, plaintiff "must show that the course

of treatment the doctors chosen was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

"Under [the deliberate indifference] standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson, 290 F.3d at 1188.

Plaintiff has not alleged facts sufficient to support a claim that any of the defendants knew of and disregarded a substantial risk of serious harm to Plaintiff. First, Plaintiff has not shown there was a substantial risk of serious harm to Plaintiff when he was housed with other inmates at CCI and SATF. Plaintiff alleges that in 2007 he was beaten and stabbed in the back at a state prison. However, since Plaintiff's arrival at CCI on January 15, 2014, there are no allegations of serious violence directed against Plaintiff. Plaintiff alleges instances of near-altercations, verbal confrontations, and near fist-fights, and he alleges that cell mates requested to be removed from Plaintiff's cell. However, Plaintiff does not allege that he was subject to serious violence against him since the 2007 incident. Verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Second, Plaintiff has not alleged facts showing that any of the defendants acted against him or failed to act, while knowing about and deliberately disregarding a substantial risk of serious harm to Plaintiff. Therefore, Plaintiff fails to state a claim for deliberate indifference under the Eighth Amendment against any of the defendants.

### C.    ADA and RA Claims

Plaintiff claims that Defendants violated his rights under the ADA and RA by refusing to grant him single cell status. Plaintiff alleges that he has been diagnosed with PTSD and

///

because of his symptoms, he is unable to share a cell with another inmate without problems arising.

"Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U. S. C. § 794. Title II of the ADA and the RA apply to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052. "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

"'Title II of the ADA prohibits discrimination in programs of a public entity or discrimination by any such entity.'" Roundtree v. Adams, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec. 1, 2005) (quoting Thomas v. Nakatani, 128 F.Supp.2d 684, 691 (D. Haw. 2000)). "The ADA defines 'public entity' in relevant part as 'any State or local government' or 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" Roundtree, 2005 WL 3284405, at *8 (citing 42

U.S.C. § 12131(1)(A)-(B)).  Public entity, "'as it is defined within the statute, does not include individuals.'"  Id. (quoting Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)).   Thus, individual liability is precluded under Title II of the ADA.  Any claim Plaintiff might intend to make under the ADA against Defendants as individuals, is not cognizable. Moreover, in order to state a claim under the ADA and the RA, Plaintiff must have been "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap."  Armstrong, 124 F.3d at 1023. Plaintiff has alleged no such exclusion or denial.  Thus, Plaintiff fails to state a claim under the ADA or the RA.

> **D.**     **Inmate Appeals Process**

Plaintiff alleges that some of the defendants failed to respond properly to his inmate appeals.  Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process.   "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).   Actions in reviewing a prisoner's administrative appeal, without more, are not actionable under section 1983.  Buckley, 997 F.2d at 495.  Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails to state a cognizable due process claim for the processing and/or reviewing of his 602 inmate appeals.

///

///

### E.    Relief Requested

In addition to money damages, Plaintiff seeks injunctive relief, declaratory relief, attorney's fees, and costs of suit.  Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).

With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest."  Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).  In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated.  A declaration that defendant violated Plaintiff's rights is unnecessary.

With regard to attorney's fees, "In any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . ."  42 U.S.C. § 1988(b).  Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit.  Plaintiff is representing himself in this action.  Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails.  Gonzales v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987).

## V.    MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiff has filed an emergency motion for preliminary injunctive relief, in which he requests that prison officials be directed to immediately house him in a single occupancy cell, until such time as the merits of Plaintiff's claims can be resolved.  The purpose of a preliminary

injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. <u>University of Texas v. Camenisch</u>, 451 U.S. 390, 395 (1981). A preliminary injunction is available to a plaintiff who "demonstrates either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in its favor." <u>Arcamuzi v. Continental Air Lines, Inc.</u>, 819 F. 2d 935, 937 (9th Cir. 1987). Under either approach the plaintiff "must demonstrate a significant threat of irreparable injury." <u>Id.</u> Also, an injunction should not issue if the plaintiff "shows no chance of success on the merits." <u>Id.</u> At a bare minimum, the plaintiff "must demonstrate a fair chance of success of the merits, or questions serious enough to require litigation." <u>Id.</u>

Federal courts are courts of limited jurisdiction, and as a preliminary matter, the court must have before it an actual case or controversy. <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665 (1983); <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 471, 102 S.Ct. 752, 757-58 (1982); <u>Jones v. City of Los Angeles</u>, 444 F.3d 1118, 1126 (9th Cir. 2006). If the court does not have an actual case or controversy before it, it has no power to hear the matter in question. <u>Id.</u> Thus, "[a] federal court may issue an injunction [only] if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." <u>Zepeda v. United States Immigration Service</u>, 753 F.2d 719, 727 (9th Cir. 1985).

By this order, the court shall dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted under § 1983, the ADA, or the RA. Plaintiff shall be granted leave to file an amended complaint within thirty days. Due to the dismissal of the Complaint, the court does not yet have before it an actual case or controversy, nor does the court have jurisdiction over any of the defendants in this action. <u>Id.</u> Therefore, Plaintiff's motion for preliminary injunctive relief, filed on June 29, 2015, must be DENIED for lack of jurisdiction. ///

## VI.    CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state any cognizable claim upon which relief may be granted under § 1983, the ADA, or the RA.   Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave to amend shall be freely given when justice so requires."   Therefore, the Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above.   Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).    Plaintiff is granted leave to file a First Amended Complaint within thirty days.

The amended complaint should be brief, but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights.   Fed. R. Civ. P. 8(a); Iqbal, 129 S.Ct. at 1948-49; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).   There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct.   Iqbal, 129 S.Ct. at 1948-49.   Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"   Id. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of his rights.   Jones, 297 F.3d at 934 (emphasis added).   In order to hold an individual defendant liable, Plaintiff must name the individual defendant, describe where that defendant is employed and in what capacity, and explain how that defendant acted under color of state law.   Plaintiff should state clearly, in his own words, what happened, describing what he saw, heard, or otherwise experienced.   Plaintiff must describe what each defendant did to violate the particular right described by Plaintiff.   Plaintiff should carefully review the court's order and only include the claims he believes are cognizable.

Twenty-five pages is more than sufficient for Plaintiff to identify his claims and set forth specific facts in support of those claims.   Accordingly, Plaintiff's amended complaint may not exceed twenty-five pages in length, and it will be stricken from the record if it violates this page limitation.   Moreover, if Plaintiff chooses to type the First Amended Complaint, he must use double-spacing, not single-spacing.   Also, as discussed above, Plaintiff must omit from the amended complaint his claims arising from events occurring at LAC, as venue is improper in this district.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff has not been granted leave to add allegations of events occurring after June 29, 2015, the date the Complaint was filed. Plaintiff should also take care to only file claims that have been administratively exhausted.

Plaintiff is advised that an amended complaint supercedes the original complaint, <u>Lacey v. Maricopa County</u>, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's Complaint, filed on June 29, 2015, is DISMISSED for failure to state a claim, with leave to amend;

2. Plaintiff's motion for preliminary injunctive relief, filed on June 29, 2015, is DENIED for lack of jurisdiction;

3. The Clerk's Office shall send Plaintiff a civil rights complaint form;

4. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a First Amended Complaint curing the deficiencies identified by the Court in this order;

5. Plaintiff's First Amended Complaint may not exceed 25 pages and, if typewritten, must be double-spaced and not single-spaced, and the First Amended Complaint will be stricken from the record if these limitations are exceeded;

6. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:15-cv-00987-GSA-PC; and

17

7.   If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   **July 8, 2015**                              **/s/ Gary S. Austin**
                                                                UNITED STATES MAGISTRATE JUDGE