1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

JARED M. VILLERY,

No.  1:15-CV-00987-DAD-BAM

12

Plaintiff,

13

v.

ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING ORDER

14

CALIFORNIA DEPARTMENT OF
CORRECTIONS, ET AL.,

(Doc. Nos. 14, 15)

15

16

Defendants.

17

Plaintiff Jared M. Villery is a state prisoner proceeding pro se with this civil rights action

18

pursuant to 42 U.S.C. § 1983.  On June 29, 2015, plaintiff filed the complaint commencing this

19

action.  (Doc. No. 1.)  The then assigned magistrate judge screened plaintiff's complaint pursuant

20

to 28 U.S.C. § 1915A and issued an order on July 8, 2015, dismissing the complaint with leave to

21

amend for failure to state a cognizable claim.  (Doc. No. 7.)  On July 30, 2015, plaintiff filed a

22

motion for reconsideration of the screening order.  (Doc. No. 10.)  The previously assigned

23

district judge granted that motion, concluding that plaintiff had stated cognizable claims for

24

violations of the Eighth Amendment, the Americans with Disability Act (ADA) and the

25

Rehabilitation Act (RA), all related to plaintiff's allegation that he was improperly denied single

26

cell status.  (Doc. No. 12.)  On December 15, 2015, plaintiff filed a motion for temporary

27

restraining order seeking single cell status.  (Doc. No. 15.)  On December 30, 2015, plaintiff filed

28

a declaration in support of his motion.  (Doc. No. 16.)  For the reasons set forth below, plaintiff's

motion for a temporary restraining order is denied.

I. BACKGROUND

In his complaint, plaintiff alleges as follows.  On August 3, 2007, two inmates attacked plaintiff with a knife, stabbed him once in the back, and repeatedly punched and kicked him in the head and upper torso.  (Doc. No. 1, 7:18-23.)  After this alleged attempt on his life, plaintiff was diagnosed as suffering from PTSD.  (*Id.* at 7:24.)  Due to his PTSD symptoms, plaintiff was then housed alone in cell for over seven months for his own safety and the safety of other inmates.  (*Id.* at 7:25-27.)  However, according to plaintiff after his removal from single cell status, over the last eight years, there have been "countless instances of near violence due to [plaintiff's] reactions to his cellmates."  (*Id.* at 8:20-21.)  According to plaintiff:

> In the preceding 18 months, [plaintiff] has had fourteen different cellmates, seven of whom have been in the last five months, and his condition has led to near altercations with all of them due to his reactions caused by his PTSD.  Now, due to an upcoming reduction in security level, [plaintiff] faces transfer to a dormitory setting, where he will be forced to live with seven other inmates.

(*Id*. at 16:19-23.)  Plaintiff claims that he has been denied single cell status "because custody staff had said that they couldn't due to overcrowding" and an email sent to all mental health staff instructed the mental health staff to refrain from making any housing recommendations due to overcrowding.  (*Id*. at 15:24-27, 11:19-23.)  Plaintiff also claims that:

> Because the failure to house [plaintiff] alone is impeding the treatment of his PTSD, and leading to the worsening of his symptoms and decompensation, continuing to force [plaintiff] to live with other inmates places both him and other inmates at imminent risk of irreparable injury, as an altercation triggered by [plaintiff's] self-defensive response to a perceived threat has the potential to result in serious injury or even death to himself and other inmates.

(*Id*. at 17:18-24.)

In support of his current motion for a temporary restraining order, plaintiff has filed two declarations in which he makes similar allegations to those summarized above.  (Doc. Nos. 14, 16.)  Specifically, he alleges therein as follows.  He suffers from PTSD and that living with other inmates has led to a deterioration of his condition, causing him to react more and more frequently

1 and violently to what looks like a threat to him.  (Doc. No. 16 at 2:13-20.)  On December 1, 2015,

2 plaintiff was involved in a physical altercation with his cellmate.  (Doc. No. 14 at 3:15-18.)

3 Then, at a classification hearing on December 9, 2015, defendant Fisher denied plaintiff

4 single-cell housing and cleared him to be housed in a dormitory.  (Doc. No. 14 at 3:9-14.)  On

5 December 15, 2015, plaintiff was involved in another violent in-cell fight with an inmate, which

6 resulted in fractures to the tarsus bones in his right ankle, the ends of his right tibia and fibula, and

7 a spiral fracture to his right fibula.  (Doc. No. 16 at 2:26-3:1.)  He underwent surgery the next day

8 during which a metal plate and two screws were inserted to stabilize his right ankle.  (*Id*. at

9 3:3-5.)  Since his discharge, plaintiff has remained in a cell by himself in the infirmary at CSATF.

10 (*Id*. at 3:3-5.)  Plaintiff claims though that "once I'm discharged I'll once again be forced to live

11 with another inmate in my cell, or worse, I'll be sent to dormitory housing in living quarters with

12 seven other inmates."  (*Id*. at 4:15-18.)

13     II. LEGAL STANDARD

14     "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear

15 showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555

16 U.S. 7, 22 (2008).  The legal principles applicable to requests for injunctive relief, such as a

17 temporary restraining order or preliminary injunction, are well established.  "The proper legal

18 standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to

19 succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

20 relief, that the balance of equities tips in his favor, and that an injunction is in the public

21 interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555

22 U.S. at 20); *see also Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011)

23 ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order

24 to obtain a preliminary injunction.");  *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d

25 1046, 1052 (9th Cir. 2009).  The Ninth Circuit has also held that "[a] preliminary injunction is

26 appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were

27 raised and the balance of hardships tips sharply in the plaintiff's favor."  *Alliance for Wild*

28 *Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (quoting *Lands Council v. McNair*,

1   537 F.3d 981, 97 (9th Cir. 2008) (en banc)).[1]

2         The Local Rules of this court impose additional requirements on parties moving for a

3   temporary restraining order.  First, the court will consider whether the moving party could have

4   sought relief by a noticed motion for a preliminary injunctive at an earlier date without the

5   necessity of seeking last-minute relief by motion for a temporary restraining order.  *See* Local

6   Rule 65-231(b).  Second, the moving party must provide specific documents to the court in

7   support of the requested temporary restraining order.  *See* Local Rule 65-231(c).

8         Finally, in cases brought by prisoners involving conditions of their confinement, any

9   temporary restraining order or preliminary injunction must be narrowly drawn, extend no further

10  than necessary to correct the harm the court finds requires preliminary relief, and be the least

11  intrusive means necessary to correct the harm in question.  *See* 18 U.S.C. § 3626(a)(2).

12       III. ANALYSIS

13        Here, plaintiff asks the court to enter a temporary restraining order requiring defendants to

14  house him in a single occupancy cell until all defendants in this matter have been served, briefing

15  is held on plaintiff's request for a preliminary injunction, and the merits of the need for a

16  preliminary injunction are resolved.  As plaintiff argues, "it is unclear when service will be

17  ordered on defendants, how long it will take for defendants to respond once served.  This process

18  could easily take well over six months."  (Doc. No. 15, 9:23-26.)  Thus, plaintiff's motion for a

19  temporary restraining order seeks injunctive relief for more than ten days in duration, and thus is

20  best characterized as a motion for preliminary injunction.  *See* Fed. R. Civ. P. 65(b)(2) (temporary

21  restraining orders are generally allowed for no more than 10 days); *see also Voth v. Mills*, Civil

22  No. 09-423-HA, 2009 WL 1159596, at *1 (D. Or. April 27, 2009).  Pursuant to Federal Rule of

23  Civil Procedure 65(a), "[n]o preliminary injunction shall be issued without notice to the adverse

24  party."  The court has previously ruled in this case that:

---

[1]  The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale
approach survives "when applied as part of the four-element *Winter* test." *Alliance for Wild
Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011).  "That is, 'serious questions going to the
merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a
preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable
injury and that the injunction is in the public interest." *Id.* at 1135.

a motion for preliminary injunction cannot be decided until the parties to the action are served. *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). Accordingly, the court will not rule on Villery's motion for a preliminary injunction until defendants have responded to the motion. . . .

(Doc. No. 12, 8:20-23.) Plaintiff's present motion for a temporary restraining order is essentially an attempt to avoid the consequences of that prior ruling and may properly be denied on that basis alone.

In any event, plaintiff has made no showing in the present of motion of the likelihood of irreparable harm since he is currently assigned to a single cell, by himself, in the infirmary at CSATF. Plaintiff does allege that "once I'm discharged I'll once again be forced to live with another inmate in my cell, or worse, I'll be sent to dormitory housing in living quarters with seven other inmates." (Doc. No. 16 at 4:15-18.) However, plaintiff does not allege that prison officials have informed him that he will be discharged from the infirmary imminently. Furthermore, where plaintiff will be housed after he is discharged is entirely speculative at this point. Speculative injury does not constitute irreparable harm. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984). Rather, a presently existing actual threat must be shown, although the injury need not be certain to occur. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130–31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279–80 (9th Cir. 1997); *Caribbean Marine Servs. Co.*, 844 F.2d at 674. Since plaintiff's claim that he will be housed in double cell or in a dormitory after he is discharged from the infirmary is speculative, plaintiff has not demonstrated that he is likely to suffer irreparable harm if injunctive relief is not granted. *See O'Keefe v. Cate*, No. 2:11-cv-2659 KJN P, 2012 WL 1555055, at *1-2 (E.D. Cal. May 1, 2012).

/////

/////

/////

/////

/////

/////

1    IV.  CONCLUSION

2          For all of the reasons set forth above, plaintiff's motion for a temporary restraining order

3    (Doc. No. 15) is denied.

4

5    IT IS SO ORDERED.

6

7    Dated:   **January 5, 2016**

8                                                                DALE A. DROZD
                                                                 UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                 6