# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED M. VILLERY,<br><br>        Plaintiff,<br><br>    v.<br><br>JEFFREY BEARD, et al.,<br><br>        Defendants | Case No. 1:15-cv-00987-DAD-BAM (PC)<br><br>ORDER FINDING SERVICE OF COMPLAINT APPROPRIATE, AND FORWARDING SERVICE DOCUMENTS TO PLAINTIFF FOR COMPLETION AND RETURN WITHIN THIRTY DAYS<br><br>FINDINGS AND RECOMMENDATIONS THAT CERTAIN DEFENDANTS BE DISMISSED FOR PLAINTIFF'S FAILURE TO STATE A CLAIM<br>(ECF No. 22)<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff Jared M. Villery ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Plaintiff's first amended complaint, filed on June 16, 2016, is currently before the Court for screening. (ECF No. 22.)

**I.    Procedural History**

Plaintiff filed this action on June 29, 2015. (ECF No. 1.) On July 8, 2015, the then-assigned Magistrate Judge screened Plaintiff's original complaint and found that Plaintiff failed to state a cognizable claim for relief. (ECF No. 7.) Plaintiff filed a motion for reconsideration of the

1

screening order. (ECF No. 10.) While that motion was pending, the then-assigned Magistrate Judge retired from the bench, and the undersigned was assigned to this matter.

On September 2, 2015, the then-assigned District Judge granted Plaintiff's motion for reconsideration in part. The Court's July 8, 2015 screening order and certain other proceedings were vacated, and the matter was referred to the undersigned for further proceedings. Shortly thereafter, the currently-assigned District Judge was appointed, and this matter was re-assigned to him. (ECF No. 12.)

Following the resolution of several motions, on April 8, 2016, the Court issued a screening order finding certain claims in Plaintiff's original complaint cognizable, and ordering Plaintiff to either file an amended complaint, or notify the Court of his willingness to proceed only on the cognizable claims. (ECF No. 19). Plaintiff then moved for an extension of time to amend his complaint (ECF No. 20), which was granted, (ECF No. 21.)

Plaintiff's first amended complaint is now before the court.

## II. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

### III. Plaintiff's Allegations

Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California. However, the alleged events took place at California State Prison-Los Angeles County ("LAC") in Lancaster, California; the California Correctional Institution ("CCI") in Tehachapi, California[1]; and at CSATF.

Plaintiff names as defendants former CDCR secretary Jeffery Beard and current secretary of CDCR Scott Kernan.

Plaintiff further names as defendants the following individuals employed at LAC: Senior Psychologist Dr. Richard Kendall, and Staff Psychologist Dr. K. Acosta.

Plaintiff also names as defendants the following individuals employed at CCI: Facility Captain Jay Jones; Psychiatrist Dr. Majid Naficy; Correctional Counselor II. Alicia Guerrero; Psychologist Dr. A. Aithal; Psychologist Dr. Jennifer Seymour; Clinical Social Worker A. Carrizales; and Correctional Counselor I J. Woodard.

Finally, Plaintiff names as defendants the following individuals employed at CSATF: Captain M. Pallares; Correctional Counselor II Michael Fisher; Correctional Counselor I S. Hernandez; Correctional Counselor I A. Miranda; and Psychologist Dr. A. Grimmig.

///

---

[1] In the order granting in part Plaintiff's motion for reconsideration, the District Court held that the claims arising at CSP Lancaster are substantially related to those from CCI and SATF. The CSP Lancaster claims are therefore before the Court.

**Background Allegations**

Plaintiff is an individual of mixed race heritage, with an African American father and a Caucasian mother. However, Plaintiff's heritage is not readily apparent from his appearance, as he appears to be only white. For their own safety, inmates are forced to only associate with inmates of their own race. Upon incarceration Plaintiff associated with black inmates due to the fact that white inmates will not associate with inmates of mixed race. CDCR classified Plaintiff as white. This classification; the extremely violent nature of the general population; Plaintiff's appearance; and Plaintiff's association with black inmates all lead to a high exposure to excessive levels of violence during the first four years of his incarceration.

Plaintiff was placed in custody of the Los Angeles County Sheriff's Department at the Twin Towers Correctional Facility ("TTCF") in Los, Angeles, California, until July 19, 2005. On September 25, 2005 Plaintiff was transferred to Kern Valley State Prison ("KVSP"). At both institutions Plaintiff suffered through numerous fights, assaults, and riots. Plaintiff also witnessed several acts of violence include stabbings, at least one murder, and the results of numerous suicides. Plaintiff alleges that broken bones and bloodshed were common spectacles.

Plaintiff stayed at KVSP until August 3, 2007, when two white inmates attempted to kill him. Plaintiff was attacked with an inmate manufactured knife, stabbed once in the back a quarter of an inch to the left of his spine, and repeatedly punched and kicked in the head and torso by these inmates. After this incident Plaintiff was diagnosed with Post Traumatic Stress Disorder ("PTSD"). Due to the symptoms of this disorder, Plaintiff was housed alone in a cell for over seven months for his safety and the safety of other inmates. During this time he stayed in Administrative Segregation ("Ad Seg."), and Plaintiff was reclassified into the Sensitive Needs Program ("SNY") because his racial classification prevented him from safely remaining in the general population.

Plaintiff continues to suffer from PTSD. Due to this disorder he suffers with symptoms such as hypervigilance to sudden movements around him and other stimuli that often trigger flashbacks and violent defensive reactions. Plaintiff also suffers from frequent nightmares about being attacked, and other incidents of violence he has witnessed and experienced. The most dangerous trigger of Plaintiff's PTSD is being forced to live with and attempt to sleep around other inmates.

1  These conditions leave it virtually impossible for Plaintiff to sleep, and Plaintiff has suffered for
2  years with minimal sleep due to his symptoms.  These conditions have forced Plaintiff to adopt
3  abnormal sleep patterns, where he is only able to sleep fully when his cellmate is not in the cell with
4  him.  The longer Plaintiff goes without sleep, the worse his reactions get.

Despite the affect this lack of sleep has had on Plaintiff's condition over the last eight years, custody and mental health staff has repeatedly refused to take any steps to house Plaintiff in single cell occupancy.  Plaintiff was released into the SNY program on March 6, 2008, and was involved in two unreported cell fights within the week.  On March 15, 2008, he was moved to a new cell where he remained until October 8, 2009.  During this time Plaintiff's reactions led to multiple altercations between him and his cellmate.  On October 8, 2009 he was transferred to LAC.

## LAC

Over the course of two years Plaintiff went through a pattern of being housed with other inmates until conflict arose, and then he was moved into a single cell for a period of no more than a few months until being placed with another cellmate.  During this time Plaintiff met with defendant Acosta, a psychologist, on three different occasions on August 2, 2013; August 13, 2013; and August 30, 2013.  During these meetings Plaintiff stressed his anxiety and the violent reactions he'd had toward former cellmates.  Plaintiff explained the way in which these reactions made him fear that he would injure himself or someone else.  However, Acosta refused to recommend single celled housing.

On September 25, 2013, Acosta informed Plaintiff that defendant Kendall, the senior psychologist at the time at LAC, had forwarded an e-mail to all mental health staff at LAC instructing them to refrain from making any single cell housing recommendations.  Acosta stated that this policy was being dictated by custody staff, and that CDCR was putting pressure on mental health staff due to overcrowding.

On October 3, 2013, when Plaintiff was forced to move in with another inmate, he was involved in a confrontation with his new cellmate when the cellmate walked into the cell behind Plaintiff without forewarning.  Plaintiff advanced on the man, but the inmate hastily exited the cell and refused to return.  Plaintiff then met with Acosta for the final time, pleading for help to obtain

5

single cell housing, but she again refused. Plaintiff was moved back to a cell by himself later that day due to Plaintiff's new cellmate's fear of living with him.

On December 6, 2013, Plaintiff was seen by defendant Kendall because Acosta was out sick. Plaintiff confronted Kendall about the single cell e-mail, and Plaintiff told Kendall he was endangering inmates by disregarding their needs. Plaintiff also explained his own need for single cell status. However, Kendall stated that no single cell recommendations would be made by mental health staff at LAC.

During this two year period, Plaintiff was forced to live with several other inmates including, but not limited to: Brent Walkins, Charlie O'Conner, inmate Jones, Da'Saun Roberts, inmate Martin, and inmate Miranda. All of these housing arrangements followed the same pattern of depriving Plaintiff of sleep, altercations, and ultimately having Plaintiff housed in a single cell for a short period of time.

## CCI

Plaintiff was transferred to CCI on January 14 or 15, 2014. Due to the deterioration of Plaintiff's condition, on January 16, 2014, Plaintiff immediately notified defendant Carrizales at California Correction Institution ("CCI") about his symptoms and problems with other inmates. Plaintiff spoke with Carrizales again on three separate occasions, not including the first, where Plaintiff repeatedly described his problems and need for single cell housing. However, Carrizales refused to make any housing recommendations for Plaintiff, stating that custody staff had instructed mental health staff to refrain from doing so based on overcrowding.

Plaintiff also discussed his problems at length with defendant Naficy, a psychiatrist, on January 22, 2014; January 29, 2014; February 11, 2014; April 29, 2014; and July 8, 2014, but Naficy simply reiterated that mental health staff would not do anything. Plaintiff had to speak with defendant Captain Jones due to Plaintiff explaining his need for single cell housing to Carrizales on January 21, 2014. At this time Jones stated that mental health staff "doesn't make housing recommendations on my facility." Jones then threatened Plaintiff with disciplinary action if he continued to speak with mental health staff about his need to live alone.

///

On January 29, 2014, and January 30, 3014, Plaintiff spoke with defendant Aithal, a psychologist at CCI, describing in detail how his condition was affected by living with other inmates and the violent problems it caused. However, Aithal restated the same line that mental health staffs at CCI were not allowed to make housing recommendations because it conflicted with the will of custody staff to keep as many beds full as possible. On January 29, 2014, Plaintiff attended his first CCI classification hearing held by defendants Jones, Gurrero, and Woodard. He explained all of the problems and violence he'd experienced living with other inmates due to his PTSD, and explained his need to be housed alone. These defendants disregarded his concerns, refused to investigate his claims, and denied him single cell housing.

Due to Plaintiff's symptoms worsening, his counselor submitted a mental health referral for him, leading to an interview with defendant Seymour on July 25, 2015. Plaintiff reiterated the numerous problems he was having due to his PTSD, and stated that he needed to be housed alone due to these problems. Defendant Seymour also stated that mental health staff would not make any housing recommendations.

**CSATF**

On January 9, 2015, Plaintiff was transferred to CSATF directly from CCI's Ad Seg. From this day forward Plaintiff was housed with several other inmates including: Arturo Palomo, Randy Gilbertson, inmate Esparaza, inmate Wilson, Nicolas Morales, Shane hall, Angelo Morales, and Samir Sweis. The same pattern of incidents that lead to confrontations and ultimately Plaintiff being housed alone until a new cell mate was provided for him continued. During these months Plaintiff's symptoms worsened.

On November 28, 2015, inmate Samir Sweis was moved in with Plaintiff and in the following weeks Plaintiff's condition was severely worsened due to lack of sleep because of Sweis' choice not to leave the cell. On the afternoon of December 15, 2015, Plaintiff was severely sleep deprived, this caused him to be anxious and on edge. At approximately 3:10 p.m., while Sweis was out of the cell, Plaintiff entered the cell, leaving the door open a crack with the intention of going back out to use the shower. As he was looking though papers with his back to the cell door, an inmate named Robinson suddenly bumped into the door and it began to slide open. Thinking

7

Robinson was a threat, Plaintiff rushed the door, coming upon Robinson standing there speaking to another inmate. Plaintiff shoved Robinson out of the doorway and said "get the fuck away from my cell." Robinson responded by hitting him in the face. Plaintiff hit Robinson three to four times before Robinson tackled him in the cell. As they both fell Plaintiff's foot was pinned, and Plaintiff's ankle snapped. After more blows were exchanged on the ground, Robinson saw that Plaintiff's ankle was badly broken, causing him to hurry out of the cell.

Plaintiff suffered a softball sized contusion on his right forehead, one on the right side of his back, the ends of his right tibia and fibula were broke, and he suffered a spiral fracture to his right fibula. Plaintiff required two surgeries to fix his broken bones, having to have an eight-inch metal plate and three long screw inserted into his leg. Since his injuries, Plaintiff has been housed alone, but he faces imminent transfer to dormitory housing.

Shortly after coming to CSATF, Plaintiff went to great lengths to communicate his concerns about living with another inmate. On January 16, 2015, Plaintiff was interviewed by defendant Hernandez in preparation for Plaintiff's initial hearing. After informing Hernandez of the numerous problems Plaintiff had suffered due to his condition and being forced to live with other inmates, Hernandez spoke to defendant Fisher. After this conversation, Hernandez told Plaintiff that Fisher would not authorize single cell status. On January 22, 2015, Plaintiff had his first classification hearing at CSATF, this hearing was held by defendants Pallares and Hernandez. After reiterating his problems Plaintiff was again denied single cell status.

Plaintiff met with Fisher to discuss his request for single cells status due to his PTSD on January 28, 2015; April 16, 2015; June 3, 2015; and June 15, 2015. All interactions with Fisher resulted in the same denial of request for housing despite declarations from former cellmates in regards to the confrontations that occurred when they lived with Plaintiff, and Plaintiff's own recitation of his ongoing problems. After providing Plaintiff's counselor, defendant Miranda, with a written request for single cell status in which he provided declarations from eight former cellmates and a copy of this Court's September 1, 2015 order issued in the instant action. Miranda spoke with Fisher for approximately fifteen minutes, at which point Fisher came to Miranda's office where Miranda provided Fisher with the paperwork. At this time Fisher stated that he didn't care what

8

paperwork Plaintiff provided because he was never going to get single cell status no matter what cellmates he had problems with. Fisher then directed Miranda to clear Plaintiff for dormitory housing, stating that Plaintiff's mental health problems were not his concern.

Plaintiff was denied single cell housing at multiple classification hearings. Plaintiff suffered numerous fractures and other injuries as a result of an in-cell altercation directly caused by Plaintiff's declining condition. Aside from seeking help from custody, Plaintiff spoke with multiple mental health staff on numerous occasions shortly after transferring to CSATF.

One mental health staff member, Grimmig, met with Plaintiff multiple times and Grimmig reiterated to Plaintiff that mental health staff could not make housing recommendations due to custody staffs' instruction not to, due to overcrowding. The indifference towards Plaintiff by Grimmig eventually turned into hostility. On January 13, 2016, shortly after Plaintiff returned from the hospital after the first surgery to repair his leg Plaintiff approached Grimmig again for single status. Grimmig told Plaintiff that prison was a violent place, and that Plaintiff would have to accept it and deal with in, because she was never going to recommend single cell housing for him.

It wasn't until after pursuing medical grievances seeking mental health treatment following his injuries that Plaintiff was assigned a new clinical caseworker who placed him on temporary single cell status. However, these actions have been met with hostility from custody staffs, who still refuse to place Plaintiff on long-term single cell status, and who remain active in their attempts to have the temporary status removed. This designation is only temporary, and because of the pressure from Fisher to remove it, Plaintiff's caseworker has informed him that within a matter of weeks the temporary placement will be removed and Plaintiff will be placed in dormitory housing.

Defendants' have all been clearly made aware of the fact that being housed with other inmates is the direct cause of the degeneration of Plaintiff's condition, and that this housing places Plaintiff at risk of irreparable injury due to Plaintiff's aggressive reactions to those around him. However, defendants still house Plaintiff with other inmates, and refuse his requests for single cell status. Defendants have acted with deliberate indifference towards Plaintiff's mental and physical needs, and have placed him in conditions that are hazardous to his safety all of which violate his Eighth Amendment right to be free from cruel and unusual punishment. Furthermore, the policy put

in place by custody staffs that instruct mental health to deny single cell housing due to overcrowding violates Plaintiff's rights to non-hazardous living conditions.

Defendant Beard, as the former secretary of CDCR, and defendant Kernan as the current secretary, were and are responsible for the promulgation of all rules, policies, and regulations which govern the behavior of all CDCR employees. By implementing policies such as pressuring mental health staff not to recommend single cell housing due to overcrowding both defendants have violated Plaintiff's Eighth Amendment right to adequate mental health care and living conditions.

Plaintiff seeks injunctive relief, compensatory damages, punitive damages, appointment of counsel, reasonable attorney's fees, costs of suit, and any further relief the court deems appropriate.

### IV. Discussion

#### a. Eighth Amendment

Plaintiff states that he brings a claim for violation of his right to mental health care and to living conditions that are not cruel and unusual, under the Eighth Amendment. Plaintiff alleges that he brings a claim based on Defendants' conduct as well as policies which have caused him harm.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2005). Prison officials must provide prisoners with medical care and personal safety and must take reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. at 1976 (1994) (internal citations and quotations omitted). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted);

Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040. Where the failure to protect is alleged, the defendant must knowingly fail to protect plaintiff from a serious risk of conditions of confinement where defendant had reasonable opportunity to intervene. Orwat v. Maloney, 360 F.Supp.2d 146, 155 (D. Mass. 2005), citing Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1991); see also Borello v. Allison, 446 F.3d 742, 749 (7th Cir. 2006) (defendant's deliberate indifference must effectively condone the attack by allowing it to happen); accord, Farmer, 511 U.S. at 833-834 (if deliberate indifference by prison officials effectively condones the attack by allowing it to happen, those officials can be held liable to the injured victim). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstrating in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

In the order granting Plaintiff's motion for reconsideration, the District Judge held that Plaintiff stated a cognizable claim in his original complaint for deliberate indifference to his serious medical needs in violation of the Eighth Amendment by sufficiently alleging his need for single cell status due to his PTSD, and the subsequent potential for serious harm to himself or his cellmates. (ECF No. 12, pp. 4-6); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976); Doty v. County of Lassen, 378 F.3d 540, 546 (9th Cir. 1994). Plaintiff therefore states a claim for relief against those defendants whom he sufficiently alleges knew about his PTSD and refused to authorize his single cell status.

Plaintiff names sixteen individual defendants in this action. The Civil Rights Act provides for liability for state actors that cause "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants, and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required

to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff may not hold all of the defendants liable by simply alleging that he was denied single cell status. Plaintiff must allege facts, liberally construed, indicating that each defendant knew of Plaintiff's condition and was deliberately indifferent to it.

Analyzing Plaintiff's allegations summarized above under these standards, the Court finds that Plaintiff has sufficiently alleged that Defendants Kendall (supra 6:3-7), Acosta (supra 5:12-24), Naficy (supra 6:21-27), Jones (supra 6:23-27), Guerrero (supra 7:5-9), Aithal (supra 7:1-5), Seymour (supra 7:10-14), Carrizales (supra 6:14-20), Woodard (supra 6:20-21), Pallares (supra 8:17-19), Hernandez (supra 8:12-19), Fisher (supra 8:12-9:3), Grimmig (supra 9:8-14), and Miranda (supra 8:24-9:3) were aware of Plaintiff's PTSD and need for single cell housing, and denied Plaintiff's numerous requests. Plaintiff has therefore stated a cognizable claim for relief against these defendants under the Eighth Amendment.

### b. Unconstitutional Policy

In the order granting in part the motion for reconsideration, the District Judge also held that Plaintiff had alleged facts sufficient to support a claim that a policy was in place that denied single cell housing for inmates with serious mental disorders. (ECF No. 12, pp. 7-8.) His allegations in his amended complaint are substantially similar to the ones found cognizable by the District Judge in the original complaint. Further, in his amended complaint, Plaintiff specifically alleges that Defendant Beard and Kernan, as the former and current secretaries of CDCR, are "responsible for the promulgation of all rules, policies, and regulations which govern the behavior of all CDCR employees." (Compl. ¶100.) Plaintiff has therefore stated a cognizable claim for relief against Defendants Beard and Kernan for promulgating an unconstitutional policy.

### c. Appointment of Counsel

In his prayer for relief, Plaintiff has requested the appointment of counsel to assist him in pursuing his claims.

"There is no constitutional right to appointed counsel in a section 1983 action." Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981); Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), withdrawn in part on other grounds, 154 F.3d 952 n.1 (9th Cir. 1998). The Court cannot

1 require an attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). <u>Mallard v. United States District Court for the Southern District of Iowa</u>, 490 U.S. 296, 298, 109 S. Ct. 1814, 1816 (1989).

However, in exceptional circumstances, counsel may be appointed for "indigent civil litigants". <u>United States v. 30.64 Acres of Land More or Less, Situated in Klickitat County, State of Washington</u>, 795 F.2d 796, 799 (9th Cir. 1986); 28 U.S.C.A. § 1915(e)(1) (1996). Determining whether exceptional circumstances are present requires weighing "the likelihood of success on the merits," and the plaintiff's ability to "articulate his claims *pro se* in light of the complexity of the legal issues involved." <u>Wilborn v. Escalderon</u>, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting <u>Weygandt v. Look</u>, 718 F.2d 952, 954 (9th Cir. 1983)).

In the present case, the Court does not find the required exceptional circumstances, and Plaintiff has not identified any circumstances warranting appointment of counsel. Even if it is assumed that Plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. This Court is faced with similar cases almost daily from indigent prisoners proceeding without representation. Further, at this early stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the merits. Additionally, based on a review of the record in this case, the Court does not find that Plaintiff cannot adequately articulate his claims.

For these reasons, Plaintiff's request for the appointment of counsel is HEREBY DENIED, without prejudice.

**CONCLUSION, ORDER AND RECOMMENDATIONS**

The Court screened the Complaint and finds that it states cognizable claims against Defendants Kendall, Acosta, Naficy, Jones, Guerrero, Aithal, Seymour, Carrizales, Woodard, Pallares, Hernandez, Fisher, Grimmig, and Miranda for deliberate indifference in violation of the Eighth Amendment, and a cognizable claim against Defendants Beard and Kernan for promulgation of a policy to deny single cell housing for inmates with serious mental disorders, in violation of the Eighth Amendment. Therefore, the Court finds that service of the first amended complaint is appropriate upon these defendants.

Plaintiff did not attempt to re-plead any claims against the following previously-named defendants: CDCR, J. Lewis, R. L. Briggs, K. Z. Allen, Oleg Liflyandsky, C. Cornell, Psy. D., Barbara Zager, Kimberly Holland, R. A Groves, and C. Schuyler. Accordingly, the Court will recommend that these defendants be dismissed from this action for the failure to state a claim upon which relief may be granted.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's request for the appointment of counsel is denied, without prejudice;

2. Service is appropriate for the following defendants:

**Jeffery Beard, former Secretary of CDCR**

**Scott Kernan, Secretary of CDCR**

**Dr. Richard Kendall, Senior Psychologist for LAC**

**Dr. K. Acosta, Staff Psychologist for LAC**

**Jay Jones, Facility Captain at CCI**

**Dr. Majid Naficy, Psychiatrist at CCI**

**Alicia Guerrero, Correctional Counselor II at CCI**

**Dr. A. Aithal, Psychologist at CCI**

**Dr. Jennifer Seymour, Psychologist at CCI**

**A. Carrizales, Clinical Social Worker at CCI**

**J. Woodard, Correctional Counselor I at CCI**

**M. Pallares, Facility Captain at CSATF**

**Michael Fisher, Correctional Counselor II at CSATF**

**S. Hernandez, Correctional Counselor I at CSATF**

**A. Miranda, Correctional Counselor I at CSATF**

**Dr. A. Grimmig, Psychologist at CSATF**

3. The Clerk of Court shall send to Plaintiff sixteen (16) USM-285 forms, sixteen (16) summonses, a Notice of Submission of Documents form, an instruction sheet, and a copy of the first amended complaint, filed June 16, 2016 (ECF No. 22);

///

1         4.         Within **thirty (30) days** from the date of service of this order, Plaintiff shall complete the attached Notice of Submission of Documents and submit the completed Notice to the Court with the following documents:

        a.         A completed summons for each defendant listed above;

        b.         A completed USM-285 form for each defendant listed above; and

        c.         Seventeen (17) copies of the endorsed first amended complaint, filed on June 16, 2016 (ECF No. 22);

        5.         Plaintiff need not attempt service on Defendants and need not request waiver of service. Upon receipt of the above-described documents, the Court will direct the United States Marshal Service to serve the above-named defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs; and,

        6.         <u>**Plaintiff's failure to comply with this Order will result in a recommendation that this action be dismissed**</u>.

***

Furthermore, for the reasons discussed above, it is HEREBY RECOMMENDED that Defendants CDCR, J. Lewis, R. L. Briggs, K. Z. Allen, Oleg Liflyandsky, C. Cornell, Psy. D., Barbara Zager, Kimberly Holland, R. A Groves, and C. Schuyler, be dismissed from this action for the failure to state a claim upon which relief may be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provision of 28 U.S.C. §636 (b)(1)(B). Within **thirty (30) days** after being served with these Finding and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Findings and Recommendations."

///
///
///
///

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.2d F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 5, 2017**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE