1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

7

| | |
|---|---|
| 8  JARED M. VILLERY, | Case No. 1:15-cv-00987-DAD-BAM (PC) |
| 9               Plaintiff, | ORDER REGARDING PARTIES' MOTIONS TO MODIFY DISCOVERY AND |
| 10        v. | SCHEDULING ORDER (Doc. Nos. 68, 85) |
| 11 JEFFREY BEARD, et al., | FINDINGS AND RECOMMENDATIONS |
| 12 | REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| 13               Defendants. | (Doc. No. 51) |
| 14 | **THIRTY-DAY DEADLINE** |

15

16 **I.       Introduction**[1]

17          Plaintiff Jared M. Villery is a state prisoner proceeding *pro se* and *in forma pauperis* in this

18 civil rights action pursuant to 42 U.S.C. § 1983.  This case proceeds on Plaintiff's claim against

19 Defendants Kendall, Acosta, Naficy, Jones, Guerrero, Aithal, Seymour, Carrizales, Woodard,

20 Pallares, Hernandez, Fisher, Grimmig, and Miranda for deliberate indifference in violation of the

21 Eighth Amendment, and against Defendant Diaz based on a policy to deny single cell housing for

22 inmates with serious mental disorders, in violation of the Eighth Amendment.  The case arises out

23 of Plaintiff's allegations concerning allegedly improper housing decisions at various institutions for

24 Plaintiff, who suffers from Post-Traumatic Stress Disorder ("PTSD").

25          Currently before the Court is Defendants' motion for summary judgment for the failure to

26 exhaust administrative remedies pursuant to Federal Rule of Civil Procedure 56, filed on January 1,

27
28

---

[1] The page numbers used herein are the CM/ECF page numbers.

2018. (Doc. No. 51.) Plaintiff filed an opposition, on extension, on April 3, 2018. (Doc. No. 74.) Defendants filed a reply on April 9, 2018. (Doc. No. 81.)

The parties have also filed motions to modify the discovery and scheduling order based in part on this pending motion. (Doc. Nos. 68, 85.) Defendants filed an opposition to Plaintiff's motion on June 1, 2018, (Doc. No. 87), and Plaintiff filed a reply to that opposition on June 20, 2018, (Doc. No. 92).[2]

These motions are now deemed submitted. Local Rule 230(l).

## II. Defendants' Motion for Summary Judgment for the Failure to Exhaust

As noted above, Plaintiff brings his claim against multiple defendants for events that occurred at several different institutions where he was previously housed—the California State Prison-Los Angeles County "(LAC")", in Lancaster, California; the California Correctional Institution ("CCI") in Tehachapi, California; and the California Substance Abuse Treatment Facility ("SATF") in Corcoran, California. This motion is a partial summary judgment motion, concerning the claim brought against Defendants Naficy, Aithal, Seymour, and Carrizales, employed at CCI, and Defendants Pallares, Hernandez, Fisher, and Miranda, employed at SATF.

In summary, Plaintiff alleges that he was diagnosed with PTSD after an incident on August 3, 2007, in which he was stabbed by two white inmates while he was incarcerated at Kern Valley State Prison. (First Am. Compl., Doc. No. 22.) Plaintiff further alleges that he was later transferred to CCI on January 14 or 15, 2014, and notified Defendant Carrizales, a social worker, about his condition for the first time on January 16, 2014. Plaintiff alleges that he followed up with Defendant Carrizales several times about his severe PTSD symptoms and inability to be housed with other inmates, but Defendant Carrizales refused to make any housing recommendations for Plaintiff, stating that custody staff had instructed mental health staff to refrain from doing so based on overcrowding. Plaintiff also alleges that he discussed his condition with Defendant Naficy, a psychiatrist; Defendant Aithal, a psychologist; and Defendant Seymour, a psychologist, but all of

---

[2] Plaintiff has also raised matters regarding the discovery and scheduling order and the progress of discovery in this case in separate motions filed on May 29, 2018 (Doc. No. 86), and June 20, 2018 (Doc. No. 91), that the Court will consider here as well, to the extent those filings impact the Court's consideration of the parties' requests to modify that order.

them refused to make any single cell housing recommendations based on instructions from custody staff.

Plaintiff further alleges that he was transferred from CCI to SATF on or around January 9, 2015. He allegedly met with Defendant Fisher, a correctional counselor, and explained his need for single cell status due to his severe PTSD symptoms. His request was denied. He also explained his condition at classification committee hearings. Defendant Hernandez, a correctional counselor; Defendant Pallares, a facility captain; Defendant Miranda, a correctional counselor; and Defendant Fisher were on the panels at these hearings. Plaintiff's request was again denied.

These Defendants move for summary judgment with respect to the claims against them, arguing that Plaintiff failed to exhaust his available administrative remedies prior to suing.

### A. Legal Standards

#### 1. Summary Judgment

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014); *Washington Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).

The failure to exhaust is an affirmative defense, and Defendant bears the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166. Defendant must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. If the Defendant carries this burden, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. "If undisputed evidence viewed in the

light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id*. at 1166. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id*.

### 2. Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1. The process is initiated by submitting a CDCR Form 602 describing the issue and the relief requested. *Id*. at § 3084.2(a). Three levels of review are involved—a first level review, a second level review and a third level review. *Id*. at § 3084.7. Bypassing a level of review may result in rejection of the appeal. *Id*. at § 3084.6(b)(15). Under § 1997e, a prisoner has exhausted his administrative remedies when he receives a decision at the third level. *See Barry v. Ratelle*, 985 F. Supp. 1235, 1237-38 (S.D. Cal. 1997).

The PLRA requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions. 42 U.S.C. § 1997e(a) (2008); *see Porter*, 534 U.S. at 524 ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). Exhaustion must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue. *Id*. at 90.

### B. Parties' Arguments

Defendants assert that the material facts in regarding this summary judgment motion are undisputed, and argue that the appeals that Plaintiff asserts exhausted the claims at issue here—

4

appeal nos. LAC HC 13047307, SATF HC 16062846, SATF E 15-00572, and SATF E 16-00105—did not properly exhaust Plaintiff's claims. Specifically, they argue that appeal nos. LAC HC 13047307 and SATF HC 16062846 were filed at different institutions during different time periods, and do not appeal the individual Defendants' decisions to deny Plaintiff single cell status. Defendants further argue that appeal SATF-E-15-00572 was cancelled at the second level, and although Plaintiff appealed the cancellation, he did not wait until receiving a decision to file suit, and the appeal was never exhausted through the third level. Finally, they argue that appeal no. SATF-E-16-00105 was also cancelled at the second level of screening, and Plaintiff did not appeal that cancellation. Therefore, that appeal was also not fully exhausted prior to filing suit.

In opposition, Plaintiff does not dispute that he never filed any administrative grievances which specifically challenged the actions of Defendants Naficy, Aithal, Carrizales, or Seymour. However, he argues that because appeal nos. LAC HC 13047307 and SATF HC 16062846 addressed his ongoing PTSD condition and the continuing denial of single cell status, and those matters were fully addressed by CDCR officials, then those appeals were sufficient to exhaust his available administrative remedies against Defendants Naficy, Aithal, Carrizales, and Seymour.

Plaintiff further argues that his appeal no. SATF-E-15-00572 against Defendants Fisher, Pallares, and Hernandez was improperly screened, rendering administrative remedies unavailable. Finally, Plaintiff argues that his appeal no. SATF-E-16-00105 regarding the conduct of Defendants Fisher and Miranda was properly cancelled as duplicative of appeal no. SATF-E-15-00572. However, when appeal no. SATF-E-15-00572 was improperly screened, his deadline to challenge the cancellation of appeal no. SATF-E-16-00105 had already passed, leaving him without the ability to complete the appeal, and making administrative remedies unavailable for that appeal as well.

In reply, Defendants argue that Plaintiff has not presented sufficient evidence showing that appeal nos. LAC HC 13047307 and SATF HC 16062846 sufficiently exhausted his administrative remedies for his claim against Defendants Naficy, Aithal, Carrizales, and Seymour. Further, Defendants argue that Plaintiff has also not shown that the narrow exception for unavailable remedies applies in this case.

///

5

## C.    Analysis

### 1.    Appeal Nos. LAC HC 13047307 and SATF HC 16062846

Plaintiff filed his first amended complaint, the operative complaint in this action, on June 16, 2016, while he was housed at SATF, in Corcoran, California, within the custody of the California Department of Corrections and Rehabilitation.  (First Am. Compl., Doc. No. 22.)  At all times relevant to the allegations against Defendants Naficy, Aithal, Seymour, and Carrizales, Plaintiff was a state prisoner incarcerated at CCI.  (FAC ¶¶ 49-63.)  Plaintiff was housed at CCI from approximately January 15, 2014, through January 9, 2015.  (*Id.*)

Here, there is no dispute that there was an administrative appeal process available at Plaintiff's institutions, or that he availed himself of that process.  (See, generally, Decl. of M. Voong, Doc. No. 51-2.)  Further, as noted above, it is undisputed that Plaintiff never filed or exhausted an appeal which challenged a decision to deny him single cell status by Defendants Nanficy, Aithal, Seymour, or Carrizales.  Plaintiff instead asserts that appeal nos. LAC HC 13047307 and SATF HC 16062846 sufficiently exhausted his claims, as an "ongoing medical issue," against Defendants Naficy, Aithal, Seymour, and Carrizales in this case, which Defendants deny

The first appeal at issue, no. LAC HC 13047307, was submitted on September 29, 2013, while Plaintiff was housed at California State Prison, Los Angeles County (LAC), several months before he was transferred to CCI.  (Doc. No. 51-5, at 220-23.)  The appeal states that the subject is "Mental health treatment," and discusses that Plaintiff was informed on September 25, 2013, by Defendant Acosta, that mental health staff are prohibited from making recommendations to place inmates on single cell status, and that this was an "underground directive" issued by Defendant Kendall.  (*Id.* at 220.)  Plaintiff sought for mental health staff at LAC to be notified that they can make housing recommendations, and to otherwise receive training on the scope of their duties and the rules.  (*Id.* at 220, 222.)  Plaintiff also sought for Defendant Acosta to be permitted to make a recommendation based on Plaintiff's current mental state.  (*Id.*)  A third level, or director's level, response was issued on March 13, 2014 regarding this appeal.  (Mar. 13, 2014 CCHCS Ltr., Doc. No. 51-5, at 227-28.)

6

The second appeal at issue, no. SATF HC 16062846, was filed at CSATF on January 28, 2016, approximately a year and a half after Plaintiff's interactions with Defendants Naficy, Aithal, Seymour, and Carrizales, and more than a year after he was transferred from CCI, where these defendants were located. (Doc. No. 51-5, at 229-34.) SATF HC 16062846 states that it concerns "Mental Health Treatment/Illegal CDCR Policy Preventing Treatment," and states that it is impossible for Plaintiff to safely house with other inmates due to his PTSD symptoms. (*Id*. at 229.) It discusses Plaintiff's December 1, 2015 altercation with a cellmate and an in-cell fight on December 15, 2015, and his complaints to Defendant Grimmig "and other mental health staff" about his need for therapy and a recommendation for single cell housing. (*Id*. at 229, 233.) Plaintiff further wrote that he was informed that custody staff direct mental health staff not to recommend single cell housing regardless of the danger to the inmates, due to overcrowding. (*Id*.) Plaintiff sought to be assigned to a different psychologist; to receive an evaluation; for various matters to be considered in his evaluation and in making recommendations; for compensation; and for CDCR to cease its policy directing mental health staff from refraining to make recommendations for single cell housing due to overcrowding. (*Id*.) A director's level response was issued on this second appeal on June 7, 2016. (June 7, 2016 CCHCS Ltr., Doc. No. 51-5, at 237-38.)

Defendants argue that neither of these appeals exhausted administrative remedies for Plaintiff's claim against Defendants Naficy, Aithal, Seymour, and Carrizales, because the appeals were filed at different institutions during different time periods regarding different Defendants. Therefore, the appeals did not alert CCI of the nature of the wrong at CCI for which redress is sought here. Plaintiff disagrees, arguing that prison officials were sufficiently notified.

"A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010). "To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations." *Id*. (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). In California, an inmate is required to "describe the problem and the action requested" in his appeal. Cal. Code Regs. tit. 15, § 3084.2(a). Accordingly, an inmate appeal satisfies California's regulations "if it alerts the prison

to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir.2009) (citation omitted). "In order to exhaust, therefore, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004); *see also Griffin*, 557 F.3d at 1121 (same).

In this case, the first appeal at issue—no. LAC HC 13047307—specifically addresses conduct by Defendant Acosta and Defendant Kendall, asserting that on September 25, 2013, Plaintiff was told by Defendant Acosta that mental health staff could not make a recommendation for single cell status due to an "underground directive" by Defendant Kendall. (9/29/13 CDCR 602 HC, Doc. No. 51-5, at 220, 222.) In addition, the responses to Plaintiff's appeal state that prison officials understood Plaintiff to be complaining that he wanted to be housed in a single cell, and that he was concerned about the conduct of Defendants Acosta and Kendall, which he argued resulted in the denial of single cell status. (*Id.*) The institution's first level response states that Plaintiff was interviewed by a psychologist regarding this complaint, and that Plaintiff requested single cell status. His appeal was initially denied upon a finding that his records showed that he did not then meet single cell status. (11/7/2013 First Level HC Appeal Response, Doc. No. 51-5, at 224.)

At the second level, Plaintiff wrote that he was dissatisfied with the first level response. He further wrote that his grievance did not request single cell status, but instead sought to raise that Defendant Kendall was perpetrating an illegal policy to not allow mental health staff to make single cell recommendations to custody staff. (11/12/13 CDCR 602 HC, Doc. No. 51-5, at 221.) In response, the institution found that there was never a policy that mental health staff cannot recommend single cell status. (12/20/2013 Second Level HC Appeal Response, Doc. No. 51-5, at 225-26.) Plaintiff's appeal was again denied.

At the third level of review, Plaintiff wrote that the appeals reviewers were ignoring the policy issue that he sought to raise, ignoring improper conduct by Defendant Kendall, and that "CSP-LAC's policy violates the state and federal rights of prisoners[.]" (11/12/13 CDCR 602 HC at 221, 223.) In response, director's level appeals staff wrote that they understood Plaintiff to be requesting (1) for mental health staff to be notified that they are allowed to make housing

recommendations; (2) for Defendant Acosta to be permitted to make housing recommendations for Plaintiff; and (3) for all mental health staff at LAC to receiving training. (Mar. 13, 2014 CCHCS Ltr.) The appeal file and documents from Plaintiff's Unit Health Record were reviewed, and the institution found no intervention necessary. The response includes some brief analysis of Plaintiff's records discussing a then-most recent January 30, 2014 Interdisciplinary Treatment Team ("IDTT") meeting, and a finding that Plaintiff was being evaluated and receiving treatment deemed appropriate by trained clinical staff. (*Id*. at 227-28.) Finally, the response states that Plaintiff's appeal was denied at this third and final level of review.

In sum, the undisputed appeals records for Plaintiff's appeal no. LAC HC 13047307 show no indication that the appeal concerned the conduct of Defendants Carrizales, Naficy, Aithal, or Seymour at CCI. Instead, the records show that Plaintiff complained regarding single cell housing recommendations at LAC and related policy concerns, and conduct by Defendants Acosta and Kendall at that institution. Considered in the light most favorable to Plaintiff, this appeal cannot be construed to address the allegations against Defendants Naficy, Aithal, Seymour, and Carizales at CCI or conduct at CCI that Plaintiff pursues in this case.

Plaintiff wrote in the second appeal at issue—SATF HC 16062846—that he had conflicts with a cellmate on December 1, 2015, and with another inmate on December 15, 2015. He further wrote that he informed Defendant Grimmig "and other mental health staff" of his need for a single cell to prevent such violence and injuries. (1/28/16 CDCR 602 HC, Doc. No. 51-5, at 229, 233.) Plaintiff also wrote that Defendant Grimmig did not care about his issues, and that he told Plaintiff to "just deal with" being in danger. (*Id*. at 233.) As noted above, Plaintiff sought to be removed from Defendant Grimmig's care and assigned another psychologist, among other remedies. (*Id*.)

In response, at the first level, Plaintiff was interviewed by a social worker and allowed to explain his issues, and the institution wrote that Plaintiff explained his background, his PTSD diagnosis, and that he felt he would program better with single cell status and with intense, PTSD-specific treatment. (3/2/16 First Level Resp., Doc. No. 51-5, at 235-36.) Plaintiff's appeal was partially granted in that some treatment options were explored, and his request for single cell housing was set to be reviewed by his IDTT.

At the second level, Plaintiff wrote that the first level response was unsatisfactory, and that not all his issues had been addressed. Further, he wrote that the IDTT did not perform a legitimate evaluation, and that it was led by Defendant Grimmig, who had animosity towards him. Plaintiff also complained about a lack of therapy recommendations, and the refusal of mental health staff to make housing recommendations based on directives from custody staff. (3/8/16 CDCR 602 HC, Doc. No. 51-5, at 232, 234.) Plaintiff's appeal was then elevated for a headquarters' level review. (*Id*. at 232.)

In the decision by the appeals staff at the headquarters' level of review, the staff identified eight requests by Plaintiff for review, most of which concerned the conduct of Defendant Grimmig and the IDTT evaluation, including the IDTT's consideration of the recent in-cell violence incidents and declarations by Plaintiff's cellmates. (June 7, 2016 CCHCS Ltr., at 237-38.) The staff also found that Plaintiff sought monetary compensation and for mental health staff to cease refusing to make single cell recommendations. (*Id*. at 237.) Plaintiff's appeal file and Unit Health Record were reviewed, and the appeals staff set forth a brief summary of the consideration of Plaintiff's request, program guides and policies, and regulations in the response. They found that no intervention was necessary, and Plaintiff's appeal was denied at this final level.

As with the first appeal discussed above, there is no indication in these undisputed records that appeal SATF HC 16062846 concerned the conduct of Defendants Carrizales, Naficy, Aithal, or Seymour at CCI or conduct at CCI. Instead, even considered in the light most favorable to Plaintiff, these undisputed documents generally notify officials of complaints concerning conduct by Defendant Grimmig. Neither of these appeals provided prison officials any notice of any conduct by Defendants Carrizales, Naficy, Aithal, or Seymour that Plaintiff complains of in this suit. Therefore, prison officials would not have been alerted to his complaints so that they could attempt to address the complaints prior to litigation. For these reasons, appeals LAC HC 13047307 and SATF HC 16062846 were insufficient to exhaust available administrative remedies for Plaintiff's claims against Defendants Carrizales, Naficy, Aithal, and Seymour.

Plaintiff also argues that he was unable to file any additional grievances specifically directed at conduct by Defendants Carrizales, Naficy, Aithal, or Seymour at CCI, because a CDCR

regulation barred him from filing a grievance raising the same issue that he pursued in an ongoing grievance. He asserts that his appeal no. LAC HC 13047307 raised his ongoing PTSD mental health condition and the denial of necessary treatment, and he could not file any new grievance regarding that matter until a change in circumstances created a new issue. Plaintiff further argues that his housing transfers and interactions with different mental health providers or prison officials did not create any new issues, until his December 2015 cell fight. At that time, Plaintiff asserts that the violence and his injuries were first documented by CDCR, amounting to a new change in circumstances for the first time, and resulting in his second appeal.

Section 3084.6—relied on by Plaintiff in making this argument—concerns reasons for rejection, cancellation and withdrawal of appeals. In discussing reasons why an appeal may be cancelled for being untimely, the regulation provides, in pertinent part, as follows:

> In determining whether the time limit has been exceeded, the appeals coordinator shall consider whether the issue being appealed occurred on a specific date or is ongoing. If the issue is ongoing, which may include but is not limited to, continuing lockdowns, retention in segregated housing, or an ongoing program closure, the inmate or parolee may appeal any time during the duration of the event; however, the inmate or parolee is precluded from filing another appeal on the same issue unless a change in circumstances creates a new issue.

Cal. Code Regs., tit. 15, § 3084.6(c)(4). Thus, under this regulation, inmates are precluded from filing duplicative appeals concerning an ongoing issue. *See id.*

In this case, the appeals here did not concern a single, ongoing issue. Plaintiff argues that because his appeal no. LAC HC 13047307 generally concerned his mental health and single cell status, and his claims against Defendants Carrizales, Naficy, Aithal, and Seymour concern similar issues, then this appeal was sufficient to exhaust what he claims was an ongoing issue regarding his mental health treatment for his PTSD symptoms. However, as discussed above, Plaintiff's appeal no. LAC HC 13047307 concerned specific issues and events, and specific Defendants. Plaintiff complained in appeal LAC HC 13047307 that, while he was housed at LAC, on September 25, 2013, Defendant Acosta told Plaintiff that he could not make a recommendation for single cell status because of a directive by Defendant Kendall. Plaintiff further complained that Defendant Kendall had perpetrated an illegal policy to not allow mental health staff to make single cell

housing recommendations, which was the reasons Defendant Acosta refused to recommend single cell status for Plaintiff. These are relatively limited issues of a specific scope concerning conduct by these Defendants at LAC. Plaintiff is overbroad in his reading of the appeal and the nature of the matters addressed by the appeal. Here, prison officials were notified and addressed conduct by Defendants Acosta and Kendall at LAC, not any ongoing issue after Plaintiff was transferred away from LAC to CCI, or complaints concerning his interactions with Defendants Carrizales, Naficy, Aithal, or Seymour at CCI.

Further, the case law that Plaintiff cites in support of his argument is distinguishable. Plaintiff relies on several authorities, but none of them are controlling or persuasive in this case, and many do not involve any mental or medical health issue, or similar circumstances as this case.

Plaintiff cites *Estrada v. Macis*, No. 1:15-CV-01292-AWI-SAB-PC, 2017 WL 1160613 (E.D. Cal. Mar. 29, 2017) for the general proposition that when a prisoner grieves an ongoing medical issue, a decision at the third level of appeal serves to exhaust claims regarding that issue. That case concerned, in relevant part, whether those who directly reviewed an administrative appeal alleging an ongoing constitutional violation may be appropriately named as defendants, in certain circumstances. In this case, as noted above, Defendants Carrizales, Naficy, Aithal, and Seymour were allegedly Plaintiff's mental health care providers at CCI (a clinical social worker, psychiatrist, and two psychologists, respectively). Plaintiff alleges that they refused to make housing recommendations based on his mental health condition, and instead deferred to a custody staff policy to refrain from recommending any single cell status based on overcrowding. Their conduct was not discussed in the appeals at issue, and they are not alleged to be involved in the review of Plaintiff's appeals. Thus, *Estrada v. Macis* is inapplicable here.

Plaintiff also relies upon *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215 (11th Cir. 2010), which concerned in part whether a grievance regarding the denial of a request for an orthopedic consultation exhausted a claim against a defendant who was appointed as the Chief Health Officer during the time that the grievance was pending. In that case, the Eleventh Circuit held that a prisoner is not required to initiate a new grievance addressing subsequent acts by prison officials that contributed to the continuation of an ongoing matter. *Id*. at 1219. However, in that

12

case, the Chief Health Officer was involved in the review of the subject appeal, and had denied it. Therefore, although not named in the appeal, that defendant was specifically involved in the overall denial of the medical consultation. As discussed above, in this case, Defendants Carrizales, Naficy, Aithal, and Seymour are not alleged to have any involvement in the review of Plaintiff's appeals. Therefore, *Parzyck* also does not apply here.

Plaintiff cites *Griswold v. Morgan*, 317 F. Supp. 2d 226 (W.D.N.Y. 2004) in support of a contention that claims relating to an ongoing medical condition arising before and after a grievance may be considered exhausted. In *Griswold*, the plaintiff grieved an issue regarding competent medical attention for heart disease. The United States District Court for the Western District of New York found that the correctional facility addressed the matter broadly, concluding that the plaintiff had been appropriately treated (without any qualifications, temporally or otherwise), and they made findings and observations from a period of years in support of this conclusion. Thus, the findings were held to not have been limited to the present time, but included whether that plaintiff had received adequate medical treatment in the past. *Griswold* is therefore concerned with the exhaustion of a claim for past medical care.

The findings and analysis in *Griswold* was fact-specific to that case, and is not persuasive in this case. Here, Plaintiff's appeal no. SATF HC 16062846 was filed after the events at issue, and was focused on the violence that Plaintiff described in December 2015 at LAC, his request for single cell status to prevent such violence and injury, and his dissatisfaction with his treatment by Defendant Grimmig. Although the records show that his background and PTSD diagnosis were considered as part of addressing his appeal, the institutional response shows that the focus was on Plaintiff's detailed, specific complaints listed above, and his then-current condition. This includes notes regarding the exploration of different treatment options for Plaintiff going forward, and the reference to a review of his housing status by the next IDTT. There is no evidence of an analysis of Plaintiff's prior housing at CCI, or his past interactions with Defendants Carrizales, Naficy, Aithal, or Seymour, to show that prison officials were notified of or had considered the claims against those Defendants. Under these circumstances, the Court does not find that Plaintiff's second appeal properly grieved his complaints for past conduct and treatment by Defendants Carrizales, Naficy,

13

Aithal, and Seymour at CCI.

Next, Plaintiff cites *Torrence v. Pelkey*, 164 F. Supp. 2d 264 (D. Conn. 2001) in support of his argument that separate exhaustion is not required for claims regarding medical care arising from the same series of events. In that case, the plaintiff added claims regarding issues related to hepatitis C ("HCV") treatment to an ongoing lawsuit alleging deliberate indifference to serious medical needs by a doctor. The United States District Court for the District of Connecticut noted in that case that the plaintiff had grieved a claim generally regarding medical neglect by that same doctor, which he asserted may have caused serious medical injury, including issues he was raising in the new HCV claims. Therefore, the grievance was found to be sufficient notification for the HCV claims. In the case currently before the court, the claims at issue involves conduct by different Defendants at different institutions, not a course of treatment by a single medical provider. *Torrence* is therefore inapplicable.

Similarly, Plaintiff attempts to rely upon *Poullard v. Blanco*, No. CIV.A. 05-1019-P, 2006 WL 1675218 (W.D. La. June 9, 2006). However, that matter also involved a claim of multiple failures to provide sufficient medical treatment by the same doctor, which is factually different from the instant case. *Id*. at *7. Therefore, *Poullard* is not persuasive here.

Plaintiff cites *Sulton v. Wright*, 265 F. Supp. 2d 292 (S.D.N.Y. 2003), for the proposition that "[r]igid issue exhaustion appears inappropriate when the fundamental issue is one of medical care from the same injury." *Id*. at 298. *Sulton* concerned a grievance complaining that the plaintiff had been transferred while knee surgery was pending, and that the surgery was necessary treatment for a knee injury. The case involved a grievance that had been granted but which officials failed to follow through with treatment. The court in *Sulton* stated that: "An inmate is not required under the PLRA to continue to complain, as here, after his grievance has been addressed, but the problem has not been corrected." *Sulton* is factually dissimilar from this case, which does not involve a grievance that discussed a course of treatment for that injury that was interrupted by a housing transfer.

Plaintiff also cites *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008) to support his argument that one grievance may adequately exhaust an ongoing medical issue. However, that case

involved a medical team at a single institution providing care for a chronic, physical condition, including allegations that the medical staff conspired together to deprive that plaintiff of sufficient care. *Id*. at 785. As noted above, the relevant appeals in this case concerned different Defendants at different institutions and different times, not a medical team acting together to treat the Plaintiff at the same institution.

Plaintiff next attempts to rely upon *Meeks v. Suliene*, No. 11-C-0054, 2012 WL 5985482 (E.D. Wis. Nov. 29, 2012), in which a single grievance was found to exhaust claims against several doctors at different prisons. In that case, the grievance in question specifically named all the defendants at issue, discussed the specific care provided by them, and described the course of denied treatment over time for the plaintiff's injury. *Id*. at *4. Here, as described in detail above, the appeals that Plaintiff seeks to rely upon do not contain information about Defendants Carrizales, Naficy, Aithal, or Seymour, or the events at CCI, and therefore prison officials were not adequately notified through the administrative appeal process of the matter to be addressed in this case. *Meeks* is therefore distinguishable.

Another case that Plaintiff seeks to rely upon, *Garcia v. Mule Creek State Prison*, No. CIV.S03-1947-MCE-PAN-P, 2005 WL 1366515 (E.D. Cal. May 31, 2005) is also factually distinguishable because it was uncontested that the plaintiff filed a grievance naming all defendants at issue, unlike Plaintiff in this case. *Id*. at *2.

Plaintiff also cites in support *Riley-El v. Godinez*, No. 13 C 5768, 2016 WL 4505038 (N.D. Ill. Aug. 29, 2016). *Riley-El* concerned a grievance discussing insufficient treatment for stomach pains and complaining of the need to see a medical doctor. The claim at issue was against the doctor who saw the plaintiff a few days after the grievance was filed. *Id.* at *10. *Riley-El* is therefore factual dissimilar from this case, since this case involves different actors at different institutions, and because the prison officials here were not alerted to the matter within a short period of its occurrence.

In sum, the Court finds that Defendants have met their burden to show that there was an available administrative remedy in this case, and that Plaintiff did not exhaust that available remedy. Plaintiff has not come forward with any evidence that administrative remedies were

effectively unavailable to him. Therefore, the Court recommends that summary judgment be granted in favor of Defendants Carrizales, Naficy, Aithal, and Seymour, and that the claims against them be dismissed, without prejudice, for the failure to exhaust available administrative remedies.

## 2. Appeal No. SATF E 15-00572

Next, Defendants argue that the undisputed facts show that Plaintiff did not exhaust his appeal no SATF E 15-00572, which he relies upon to exhaust his claims against Defendants Pallares, Hernandez, and Fisher. It is undisputed that Plaintiff submitted appeal no. SATF E 15-00572 on or around January 30, 2015, in which he complained in part that he was improperly double-celled at SATF during the period in question. (SATF E 15-00572, Doc. No. 51-5, Ex. A, at 14-17.) Further, it is undisputed that this appeal was cancelled on May 18, 2016, at the second level screening stage. (Shaw Decl., Doc. No. 51-5, ¶ 25.) Plaintiff argues that this appeal was improperly screened, rendering remedies effectively unavailable due to the actions of prison officials.

The PLRA does not require the exhaustion of administrative remedies that have been rendered effectively unavailable. *E.g., Sapp*, 623 F.3d at 822. "[I]mproper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA." *Id*. at 823. "If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." *Id*.

However, the Ninth Circuit has held that "[t]he obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original). Generally, in California, a prisoner may appeal an improper cancellation under the regulations. *See* CCR, Title 15 § 3084.6(a)(3) and (e) (inmate can appeal cancellation decision separately pursuant to the rules in § 3084.6(c), and if inmate prevails, cancelled appeal can be considered at the discretion of the appeals coordinator).

In this case, it is undisputed that the second-level denial of Plaintiff's appeal no. SATF E 15-00572 stated that Plaintiff could appeal the cancellation. (Shaw Decl., Ex. A, ¶ 25.) Further, Plaintiff in fact did submit an appeal challenging the cancellation sometime in late May or early

June 2016, which was assigned appeal no. SATF E 16-02566. (*Id*. at ¶ 26.) Plaintiff then filed the operative First Amended Complaint in this matter on June 16, 2016, while appeal no. SATF E 16-02566 was still pending.

Since there was a procedure available for Plaintiff to challenge the cancellation of his appeal here, which he availed himself of but did not wait for the results from prior to filing suit, this case is distinguishable from *Sapp*. The allegedly improper cancellation of Plaintiff's appeal did not render administrative remedies effectively unavailable to him since there remained some remedy available through the appeals process. *See Wilson v. Zubiate*, 718 F. App'x 479, 482 (9th Cir. 2017) ("[Plaintiff] had the possibility of appealing the cancellation decision and therefore cannot show that he was 'thwarted by improper screening' under *Sapp*, 623 F.3d at 823.").

It is further undisputed that Plaintiff's appeal no. SATF E 16-02566 was finally denied at the third level of review on October 31, 2016, during the pendency of this lawsuit. (Voong Decl., Doc. No. 51-5, ¶ 10 & Ex. B.) Based on the ultimate denial of this appeal, Plaintiff argues that he should be excused from the exhaustion requirement here.

The Supreme Court has held that the exhaustion requirement in the PLRA is mandatory, and a court does not have discretion to excuse the exhaustion requirement. *Ross*, —U.S.—, 136 S. Ct. 1850, 1856–57, 195 L. Ed. 2d 117 (2016). Courts may only consider whether some remedies were available, but may not take other special circumstances into account. *Id.* "[A] prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation." *Akhtar v. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012) (quoting *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam)). "If, however, a plaintiff files an amended complaint adding new claims based on conduct that occurred after the filing of the initial complaint, the plaintiff need only show that the new claims were exhausted before tendering the amended complaint to the clerk for filing." *Id.* (citing *Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010)).

Plaintiff argues that remedies were unavailable in this case because his appeals were denied, but that alone does not raise a disputed issue of fact regarding the available of administrative remedies. Instead, it is undisputed here that Plaintiff did not exhaust his claims before he tendered

his First Amended Complaint to the Clerk of the Court for filing. Instead, he was involved in the administrative appeal process at the time that his First Amended Complaint was filed, and at the time of filing, there was still a possibility for relief. Plaintiff has not complied with the PLRA here by exhausting his remedies while the litigation was pending, and the Court cannot excuse his non-compliance. Thus, Defendants have met their initial burden to show that administrative remedies were available and were not exhausted by Plaintiff prior to filing suit, and Plaintiff has not raised any evidence that they were unavailable.

### 3. Appeal No. SATF-E-16-00105

Finally, Defendants argue that although Plaintiff asserts that appeal no. SATF E 16-00105 exhausted his claims against Defendants Fisher and Miranda in this case, he did not fully exhaust that appeal prior to suing. Therefore, this appeal also does not sufficiently exhaust Plaintiff's administrative remedies, and summary judgment should be granted in their favor.

It is undisputed here that appeal no. SATF-E-16-00105 was not exhausted through the third-level of review before Plaintiff filed the operative complaint in this case. (Voong Decl. ¶ 8 & Ex. A.) Instead, on April 14, 2016, appeal no. SATF-E-16-00105 was cancelled at the second-level screening stage pursuant to California Code of Regulations, title 15, § 3084.6(c)(2). Plaintiff was advised that he could appeal the cancellation. (Shaw Decl. Ex. A, ¶ 31.) However, Plaintiff did not submit a separate appeal challenging the cancellation of SATF-E-16-00105. (Shaw Decl. Ex. A, at ¶ 32; Pl.'s Resp. to Def. Miranda's Interrog. Doc. No. 51-5, Ex. K, at No. 4; Pl.'s Resp. to Def. Fisher's Interrog., Doc. No. 51-5, Ex. J, at No. 4.)

Plaintiff argues that appeal no. SATF E 16-00105 was related to appeal no. SATF E 15-00572, because it concerned continuing, related conduct by some of the same Defendants that were named in appeal no SATF E 15-00572. Thus, appeal no. SATF E 16-00105 was cancelled at the second level as duplicative, and Plaintiff did not challenge that cancellation. However, afterwards, appeal no. SATF E 15-00572 was also cancelled, and improperly so, according to Plaintiff. Plaintiff further asserts that the deadline to challenge the cancellation of appeal no. SATF E 16-00105 had passed by the time appeal no. SATF E 15-00572 was cancelled. Therefore, Plaintiff argues that administrative remedies were technically unavailable for appeal no. SATF E 16-00105.

The Court finds that Defendants have met their burden to show that administrative remedies were available here, and that Plaintiff did not exhaust those remedies. Under the law described at length above, and as conceded by Plaintiff, a duplicative appeal addressing an ongoing issue would have been properly rejected by prison officials. Plaintiff admits that his appeals were properly consolidated, and his appeal no. SATF E 16-00105 properly cancelled for those reasons. Further, although the prior appeal no. SATF E 15-00572 was cancelled, and Plaintiff argues that this was improper, it is undisputed that there was a process available to appeal any improper cancellation. But Plaintiff did not use that process. Based on these undisputed facts, Defendants have shown that some remedy was available, and Plaintiff has not presented evidence that remedies were unavailable. Plaintiff's argument that he should be excused from exhaustion is unavailing as it was for his other appeal, for the reasons discussed above.

Based on the foregoing, Defendants have met their burden on summary judgment here with respect to the claims brought against Defendants Fisher, Pallares, Hernandez, and Miranda, and Plaintiff has not raised any genuine issue of material fact. Therefore, the claims against those Defendants should be dismissed, without prejudice, for the failure to exhaust available administrative remedies.

## III. Motions to Modify Discovery and Scheduling Order

Defendants move to vacate the deadlines in the discovery and scheduling order in this case, pending the final resolution of their motion for summary judgment for the failure to exhaust administrative remedies. In support, Defendants cite that discovery was stayed for the eight months while Defendants were involved in the summary judgment motion, and additional time is needed to better allow for the preparation of a single merits-based dispositive motion in this matter, after there is a final resolution of the exhaustion dispute.

Plaintiff moves to amend the discovery and scheduling order in this case, arguing that both the failure to properly respond to discovery requests by Defendants, and certain impediments due to the conditions of Plaintiff's confinement, require an extension of the discovery deadline. Plaintiff seeks six additional months for the discovery period alone. In response, Defendants agree that some modification of the discovery period is needed, but object to the length of time that Plaintiff

proposes, based in part on the substantial time already spent on discovery here. Plaintiff disagrees, arguing in reply that significant time is needed due to the necessary discovery left to complete.

The Court finds good cause to grant Defendants' motion, and to grant Plaintiff's motion in part. As the Court discussed with the parties earlier in this case, the issues involved in this litigation and the large number of parties involved, at different institutions and over a lengthy period, have made this matter difficult to manage, despite the diligent efforts of the parties and counsel. Significant judicial resources have been consumed on this matter, but the Court is well-aware that there is necessary work left to be done in resolving this case. Further, the resolution of Defendants' this summary judgment motion may make significant changes to the scope of this case, and will likely have an impact on case management going forward.

Therefore, the Court finds that judicial economy, the interests of justice, and the management of resources is best served by vacating the discovery deadline and the dispositive motion deadline in the current discovery and scheduling order, issued on October 3, 2017. (Doc. No. 33.) In due course following the final resolution of Defendants' pending summary judgment motion, the Court will set a scheduling conference with the parties to resolve case management issues going forward for this case. The Court will order that the parties prepare a joint statement with a case management proposal, and the Court will wish to discuss severance of this matter into two or more cases, which may be necessary for case management purposes. The order setting the scheduling conference will set forth the parties' duties in meeting and conferring on this matter, and the requirements for the joint statement.

**IV.     Conclusion**

For the reasons explained, the Court hereby orders that:

1.     Defendants' motion to modify the discovery and scheduling order (Doc. No. 68), is granted;

2.     Plaintiff's motion to modify the discovery and scheduling order (Doc. No. 85), is granted in part; and

3.     The discovery deadline and dispositive motion deadline (other than a motion for summary judgment for the failure to exhaust administrative remedies) (Doc. No. 33) are vacated,

pending further order of the Court.

***

Further, the Court hereby recommends that:

1.      Defendants' motion for summary judgment for the failure to exhaust available administrative remedies (Doc. No. 51), be granted; and

2.      Plaintiff's claims against Defendants Carrizales, Naficy, Aithal, Seymour, Fisher, Pallares, Hernandez, and Miranda be dismissed, without prejudice, for the failure to exhaust available administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, under 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**January 16, 2019**__            ___/s/ *Barbara A. McAuliffe*___
                                                                UNITED STATES MAGISTRATE JUDGE