1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED M. VILLERY,<br><br>              Plaintiff,<br><br>     v.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS, *et al.*,<br><br>              Defendants. | No.  1:15-cv-00987-DAD-BAM (PC)<br><br><br>ORDER ADOPTING FINDINGS AND<br>RECOMMENDATIONS AND DENYING<br>PLAINTFF'S MOTION TO MODIFY<br>PRELIMINARY INJUNCTION<br><br>(Doc. Nos. 128, 142) |

      Plaintiff Jared M. Villery is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

      On May 14, 2019, plaintiff filed a motion to modify the preliminary injunction that the court issued on March 25, 2019.  (Doc. No. 128.)  On February 25, 2020, the assigned magistrate judge issued findings and recommendations recommending that plaintiff's motion be denied. (Doc. No. 142.)  In particular, the magistrate judge found that defendant had "complied with the March 25, 2019 order requiring placement of the McCall Report in Plaintiff's health record and an immediate review to determine whether Plaintiff's condition requires that he be designated for
/////

1

single-cell status in light of the McCall Report." [1]  (Doc. No. 142 at 5.)  The magistrate judge

reasoned that

> [t]he fact that the review did not reach the conclusion Plaintiff desires
> does not constitute evidence that CDCR flouted the Court's order—
> in letter or in spirit—nor did the Court's order purport to guarantee
> that such review would result in Plaintiff being designated for single-
> cell status.   Rather, the Court ordered only that the additional
> preliminary injunctive relief of an immediate review, with the benefit
> of the McCall Report in Plaintiff's health record, was warranted
> under the circumstances.  That the outcome of the UCC was not to
> Plaintiff's liking does not constitute changed circumstances or new
> facts warranting modification of the preliminary injunctive relief
> already granted.

(*Id.*)  Those findings and recommendations were served on the parties and contained notice that

any objections thereto were to be filed within fourteen (14) days of service.  (*Id.* at 7.)  Following

the granting of multiple extensions of time, plaintiff timely filed objections on June 18, 2020.

(Doc. No. 149.)  Defendants filed responses on June 26, 2020 and July 29, 2020.  (Doc. Nos. 151,

152.)

      In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), the court has conducted a

*de novo* review of this case.  Having carefully reviewed the entire file, including plaintiff's

---

[1]  On February 2, 2018, plaintiff had filed an emergency motion for a preliminary injunction,
requesting that the court order defendants to house him in single-cell housing.  (Doc. No. 62.)
Plaintiff alleged that, as a result of a violent attack he suffered while in prison, he developed
PTSD that manifests itself in the form of "intense anxiety; hypervigilance; a severely
oversensitive startle response; paranoia about being assaulted; aggressive, angry verbal and
physical outbursts; and an inability to sleep in the presence of others."  (*Id.* at 8.)  Although
plaintiff had been able to endure these symptoms while living in single-cell housing despite
receiving little other treatment for his condition, defendants later transferred him to shared
housing, which caused plaintiff to rapidly decompensate and develop severe, chronic sleep
deprivation.  (*Id.* at 9–10.)  On March 25, 2019, the court adopted the magistrate judge's findings
and recommendations in part, granted plaintiff's motion for preliminary injunctive relief in part,
and ordered defendants to convene a review "to determine whether plaintiff's condition requires
that he be designated for single-cell status in light of the McCall Report," an expert report
prepared by Dr. Mariposa McCall that assessed plaintiff's mental health history and condition.
(Doc. No. 123 at 6.)  On April 19, 2019, defendants notified the court that it had convened a Unit
Classification Committee ("UCC") to determine whether plaintiff's condition required him to be
designated for single-cell status in light of the McCall Report.  (Doc. No. 126.)  But defendants
did not disclose to the court what decision the UCC had reached or what action the UCC had
taken.  The court first learned of the UCC's decision to reject plaintiff's request to be designated
for single-cell status upon review of plaintiff's pending motion, which plaintiff filed on May 14,
2019.  (Doc. No. 128.)

2

1  objections and defendants' responses, the court concludes that the findings and recommendations

2  are supported by the record and by proper analysis.

3        In his objections, plaintiff first argues that the magistrate judge incorrectly concluded that

4  defendants were entitled to complete deference in their decision not to designate him for single-

5  cell housing because they did not consider the McCall Report in good faith, they did not have

6  legitimate security concerns, and they ignored plaintiff's extensive sleep deprivation.  (Doc. No.

7  149 at 11–17.)  In response, defendants contend that the UCC did consider the McCall Report and

8  other evidence, including:

9
10          [1] a mental health chrono indicating that the Interdisciplinary
        Treatment Team had found on March 14, 2019, that a single-cell
        chrono was unwarranted, [2] the lack of documented significant in-
11          cell/predatory/assaultive behavior towards inmates or in-cell
        violence, [3] the conclusions of prior Institutional Classification
12          Committees clearing Plaintiff for double cell and dorm housing
        status, [4] a chrono signed by Plaintiff on April 11, 2019 confirming
13          that he had no enemy concerns at VSP, and [5] active programming
        by Plaintiff at VSP involving interaction and communication with
14          other inmates.

15  (Doc. No. 152 at 6.)  Based on the UCC's consideration of that evidence and need to "balanc[e]

16  Plaintiff's mental health status with other factors implicating the safety and security of Plaintiff,

17  other inmates, staff, and the institution," defendants maintain that the UCC's April 11, 2019

18  decision should be afforded deference by the court. [2]  (*Id.* at 7–8) (citing Cal. Code Regs. tit. 15, §

19  [2]  The undersigned views defendants' claim that plaintiff lacks a history of in-cell violence with
20  considerable skepticism.  Though defendants' statements may accurately reflect internal,
bureaucratic determinations, the magistrate judge in this case had previously found that:

21          Plaintiff had at least twenty-eight cellmates between March 6, 2008
22          and December 15, 2015.  He also frequently lived alone for days,
        weeks, or months at a time due to problems with cellmates, despite
23          not being on single-cell status, from July 15, 2013 through November
        28, 2015.  At these times, housing staff prevent[ed] other inmates
24          from being housed with Plaintiff as much as possible.  The total
        period of being house[d] alone during this time was 359 days.

25  (Doc. No. 111 at 20) (citations omitted).  A review of the declarations submitted by ten of those
26  cellmates indicate that relations between themselves and plaintiff veered dangerously close to
serious conflict, with all of them attesting to having experienced repeated, potentially dangerous,
27  incidents with plaintiff.  (*Id.* at 20–25.)  One cellmate declared that his time living with plaintiff
was "the worst time I've spent since getting locked up"; another wrote that he had "never lived in
28  the cell with someone so paranoid"; a third "felt too threatened to live with plaintiff any longer";

1    3269.1 and CDCR Dep't Ops. Manual § 54046.4.)  In addition, defendants argue that even if the

2    court were to find that plaintiffs' claim of deliberate indifference to his serious medical needs—

3    i.e., a housing accommodation in light of his PTSD and mental health conditions—"plaintiff

4    raises a mere disagreement as to the course of his medical treatment," which is insufficient to

5    establish such a claim.  (*Id.* at 8.)

6           The court recognizes that "'[i]n deciding whether there has been deliberate indifference to

7    an inmate's serious medical needs, [it] need not defer to the judgment of prison doctors or

8    administrators'" but that, nonetheless, prison officials are entitled to deference in those "outlier

9    case . . . when there is evidence that the challenged medical decision was made pursuant to" a

10    "policy or practice [that] addresses bona fide safety and security concerns[.]"  *Chess v. Dovey*,

11    790 F.3d 961, 974 (9th Cir. 2015) (quoting *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir.

12    2014)).  Here, the court agrees with plaintiff that defendants have not identified any safety or

13    security concerns that would actually conflict with plaintiff's medically based request for single-

14    cell housing.  *Mendiola–Martinez v. Arpaio*, 836 F.3d 1239, 1254–55 (9th Cir. 2016) (explaining

15    that prison officials are entitled to deference in such situations only when "medical care and

16    security concerns *genuinely clash*") (emphasis added).  Nonetheless, plaintiff's focus on

17    defendant's lack of demonstrated legitimate security concerns is misplaced here because the UCC

18    did not base its decision solely on purported security concerns.[3]  Rather, the UCC considered the

19    McCall Report, as well as "clinician input" from "the mental health team" in the form of a

20    recommendation from plaintiff's Interdisciplinary Treatment Team, which determined that single-

21

22    a fourth called plaintiff "a ticking time-bomb ready to blow up"; a fifth described plaintiff as
"very angry, paranoid, and mumbling to himself about a conspiracy"; and so on.  (*Id.*)  Another

23    declaration from plaintiff's bunkmate as of April 14, 2019 was also submitted with the pending
motion and details behavior by plaintiff that is consistent with those earlier characterizations.

24    (*See* Doc. No. 128, Ex. 14 at 123–27.)

25    [3]  Plaintiff also argues that defendants' decision not to designate him for single-cell housing is
based on an administrative policy to not provide inmates with the housing of their choice and not

26    accommodate "an inmate's needs if it could conceivably lead other prisoners to seek similar
relief."  (Doc. No. 14 at 20–21.)  However, the purported administrative policy that plaintiff

27    describes was not mentioned in the UCC's action summary or comments, which outlines the
several bases on which the UCC based its determination that plaintiff "was appropriate for double

28    cell housing."  (Doc. No. 128 at 32.)

1    cell housing in his case was "unwarranted." (*See* Doc. No. 128 at 32.)  The undersigned agrees

2    with the magistrate judge's assessment that plaintiff's "motion to modify is fundamentally based

3    on the argument that the UCC's determination that he should remain in double cell housing

4    indicates CDCR's unwillingness and inability to make a reasoned decision in light of all the

5    evidence available in his central and health file." (Doc. No. 142 at 6.)  The undersigned also

6    agrees with the magistrate judge's conclusion that plaintiff's disagreement with the UCC's

7    determination in this regard "does not constitute changed circumstances or new facts warranting

8    modification of the preliminary injunctive relief already granted." (*Id.* at 5.)

9         Next, plaintiff argues that without the requested modification, the preliminary injunction

10   issued by this court has "failed to maintain the status quo ante litem, the maintenance of which

11   would have required [defendant] Diaz to reimpose [plaintiff's] single cell status classification,

12   and house him in a single occupancy cell." (Doc. No. 149 at 18.)  But the preliminary injunction

13   that plaintiff now purportedly seeks to modify did not require defendants to designate plaintiff for

14   single-cell housing—even though that was the relief that plaintiff had requested.  If the court had

15   intended to maintain the status quo as plaintiff now characterizes it, then the injunction would

16   have reflected that intent and ordered that relief accordingly.  It did not.  The court instead

17   concluded that only limited injunctive relief was warranted, even under the "extraordinary" facts

18   of this case. (*See* Doc. No. 123 at 6.)  Specifically, the court ordered "defendant Diaz to ensure

19   that an immediate review is undertaken to determine whether plaintiff's condition requires that he

20   be designated for single-cell status in light of the McCall Report." (*Id.*)  As the magistrate judge

21   correctly found, defendant complied with that order by convening the UCC on April 11, 2019 to

22   conduct that review and make a determination. (Doc. No. 142 at 5.)

23        Plaintiff is certainly not alone in his dissatisfaction with the result of that review by the

24   UCC.  The undersigned remains very troubled by defendants' decision and continues to have

25   serious concerns regarding the safety and care of plaintiff, as well as that of any other prisoner he

26   is celled with under these circumstances.  Defendants have clearly been made aware of the court's

27   serious concerns in this regard.  Nevertheless, plaintiff's dissatisfaction with the result reached by

28   prison officials as a result of the review ordered by the court—even coupled with the

                                                5

undersigned's concern about the correctness the UCC's ultimate determination—does not constitute changed circumstances or new facts warranting modification of the preliminary injunctive relief that the court granted in this case.

Accordingly,

1.   The findings and recommendations issued on February 25, 2020 (Doc. No. 142), are adopted in full;

2.   Plaintiff's motion to modify the preliminary injunction that the court issued on March 25, 2019 (Doc. No. 128) is denied; and

3.   This action is referred back to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:   **December 7, 2020**

_____
UNITED STATES DISTRICT JUDGE